United States Court of Appeals,

Fifth Circuit.

No. 93-3741.

PRINCIPAL HEALTH CARE OF LOUISIANA, INC., Plaintiff-Appellant,

v.

The LEWER AGENCY, INC., and General American Life Insurance Company, Defendants-Appellees.

Nov. 23, 1994.

Appeal from United States District Court for the Eastern District of Louisiana.

Before REAVLEY, DeMOSS and STEWART, Circuit Judges.

STEWART, Circuit Judge:

This diversity case arising in Louisiana involves the issue of which parent's health care insurer provides coverage for the neonatal medical care of their illegitimate child under the provisions of the parents' policies. Because we conclude that the magistrate judge erroneously held that the Principal Health Care plan provided primary coverage, and thus that the court improperly granted summary judgment in favor of the mother's insurer, we reverse.

*FACTS*

On December 27, 1991, Danielle C. Plauche (Plauche) gave birth to Justin Plauche (Justin) at East Jefferson General Hospital. The birth certificate listed Fred B. Pepper (Pepper) as the baby's father. Pepper and Plauche were not married at the time of Justin's birth, nor have they ever been married to each other or lived together. Pepper has formally acknowledged his paternity of

1

Justin, and Plauche concurred in this acknowledgement as provided under Louisiana law.

Pepper's employee health care plan was issued by Principal Health Care of Louisiana, Inc. Immediately after Justin's birth, Pepper purportedly added Justin as an additional assured and/or member under Principal's policy. Pepper paid for the dependent coverage himself through payroll deductions.

At the time of Justin's birth, Plauche's employee health care plan was provided by General American Life Insurance Company through The Lewer Agency, Inc. Immediately after Justin was born, Plauche also added Justin to her health care policy as Pepper had done with his plan. Plauche's dependent coverage was paid by her employer.

Justin was born four months premature and had to remain at East Jefferson from the date of his birth (December 27, 1991) until April 13, 1992, incurring expensive medical bills for his neonatal care. Fortunately, Justin eventually became healthy enough to leave the hospital. When he was discharged, he went to live with his mother, where he has remained. There is no evidence that there has ever been any judicial determination involving Justin's custody. However, in August 1992, the Juvenile Court for the Parish of Jefferson ordered that Pepper provide child support and maintain his current medical insurance for Justin and that he be responsible for the health care expenses of Justin.

Because there were two employee welfare plans involved, a dispute arose as to which employee welfare plan provided primary

coverage for Justin's medical expenses.  Because the sum total of the bills did not exceed the maximum limits of either plan, the primary carrier necessarily would be responsible for the entire amount.  Plauche filed suit against Principal in state court asserting Justin's coverage under the Principal plan and seeking attorney's fees and penalties under La.R.S. 22:657[1].  After negotiations, Plauche compromised her state court suit in exchange for an agreement between Principal and General American whereby each company would pay fifty (50%) percent of the outstanding medical bills, which totalled $245,089.88.  Of that amount, all but approximately $500.00 represented expenses incurred during Justin's hospitalization at East Jefferson.  The agreement between Principal and General American further provided that Principal would file a declaratory judgment action to seek a determination of the respective obligations of the parties.  The prevailing party would be entitled to reimbursement from the other party.

Pursuant to the agreement, Principal filed this declaratory judgment action against General American and Lewer in the federal district court for the Eastern District of Louisiana.  Principal also filed a motion for summary judgment.  Lewer and General American brought a cross-motion for summary judgment.  The case was referred to the federal magistrate.  The magistrate granted General American and Lewer's motion for summary judgment, ruling that

---

[1]Under pertinent Louisiana statutes, an insurer can be liable for "bad faith" penalties and attorney's fees if it arbitrarily or capriciously denies coverage to an insured, fails to pay a claim timely, or otherwise acts in "bad faith."

3

Justin was covered under the Principal plan as Pepper's "dependent child" during the time that Justin was at East Jefferson, and that Principal was the primary insurer of Justin under the so-called "birthday rule" in the coordination of benefits provisions of the Principal plan, because Pepper's birthday precedes Plauche's in the calendar year. 831 F.Supp. 570. This appeal followed.

*STANDARD OF REVIEW*

We review a district court's grant of summary judgment de novo. *Topalian v. Ehrman,* 954 F.2d 1125 (5th Cir.1992). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits filed in support of the motion, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Interpretation of an insurance policy is a question of law. *FDIC v. Barham,* 995 F.2d 600 (5th Cir.1993). Accordingly, we review a district court's interpretation of an insurance policy de novo. *FDIC v. Mijalis,* 15 F.3d 1314 (5th Cir.1994); *Harbor Insurance Co. v. Urban Construction Co.,* 990 F.2d 195, 199 (5th Cir.1993).

*ANALYSIS*

Resolution of this case depends solely upon an interpretation of policy language. Neither party asserts that there are genuine issues of material fact which would preclude summary judgment. In fact, both parties have filed motions for summary judgment on the

4

assertion that there are no genuine issues of material fact. Principal makes two arguments in support of its position that the magistrate erred in granting summary judgment in favor of General American. Principal contends that there are two separate and distinct clauses contained within its policy which apply to this issue and which would absolve it of any liability for the medical expenses Justin incurred at East Jefferson.

First, Principal argues that Justin was not dependent upon Pepper for the majority of his financial support and thus does not qualify as a dependent pursuant to the Principal plan. Thus, Principal contends that Justin is not in fact eligible for coverage under the plan albeit that Pepper ostensibly added Justin to it. Second, and alternatively, Principal argues that pursuant to the terms of the coordination of benefits provisions in both policies, the General American plan should provide primary coverage, even if we determine that Justin is covered under the plan.[2]

As a federal court sitting in diversity, we apply Louisiana

---

[2]In its reply brief, Principal urges for the first time a third alternative in which coverage between the two plans should be apportioned on a *pro rata* basis. Not only do we question Principal's ability to propose this Solomonic solution for the first time in its reply brief, we also reject this argument as meritless because there is no policy language in either of the two plans which would support such an allocation.

Principal also has forwarded an equal protection argument, contending that the policy as construed by the magistrate places a heavier burden on legitimate children than illegitimate children. While we note in passing the facial weakness of such an argument given an apparent lack of state action, we do not reach the constitutional issue because we grant relief to Principal on the basis of the policy language.

5

rules of policy interpretation in this case. Louisiana law is clear that the interpretation of insurance policy provisions is to be governed by the rules pertaining to the interpretation of other types of contracts. *Battig v. Hartford Accident and Indemnity Co.,* 608 F.2d 119 (5th Cir.1979).

The rules for interpreting contracts are set forth in various articles of the Louisiana Civil Code. Article 2045 provides that "[i]nterpretation of a contract is the determination of the common intent of the parties." Article 2046 goes on to state that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Article 2047 provides that "[t]he words of a contract must be given their generally prevailing meaning." Article 2048 provides that "[w]ords susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." Finally, Article 2050 provides that "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."

*The coverage issue*

As noted above, Principal first argues that Justin does not qualify as a dependent under the provisions of the Principal plan. Pursuant to the plan's terms, Justin would have to qualify as a "dependent child" of Pepper in order to be covered under the Principal plan. The term "dependent child" as defined in the Principal plan includes, *inter alia,* "(1) the Subscriber's

6

unmarried, natural or legally adopted child residing within the service area; ..." But the provisions go on to provide that "... the child must be dependent upon the Subscriber for a majority of his or her financial support ... and must be either under nineteen (19) years of age, a full-time student, or a disabled dependent."

It is undisputed that Justin's mother has provided for her son almost singlehandedly from the time of conception forward. Any and all prenatal care, hospital visits and examinations prior to birth were paid for by Plauche alone. From the time Justin was discharged from the hospital, Plauche has provided for all of Justin's needs, including a home, food, clothing, and emotional nurturing. Pepper's only contributions to Justin's support for expenses incurred during the time Justin was in the hospital were a one-time $200.00 payment toward the medical bills and the approximately $88 per month in insurance premiums for Justin's dependent coverage. Overall, Pepper's only other contribution is the approximately $13.50 per month in child support he has been ordered to pay. Thus, Principal contends that Justin does not qualify as Pepper's "dependent child" under the Principal plan because he is not dependent upon Pepper for a majority of his financial support.

The first time Principal appears to have asserted the coverage issue was in its motion for summary judgment. In its cross-motion for summary judgment, General American contended that Principal had waived its right to litigate the coverage issue or otherwise deny coverage by entering into the agreement to pay half

7

of the medical bills in order to end the state court litigation. However, the magistrate did not reach this "waiver" issue. Notwithstanding Principal's contentions to the contrary, the magistrate concluded that during the time Justin was in the hospital, he was dependent upon Pepper for a majority of his financial support; thus, Justin was covered under the Principal plan.

On appeal, Principal again seeks to deny coverage under the plan, claiming that Justin is not Pepper's "dependent child" because Justin does not depend upon Pepper for a majority of his financial support. While General American and Lewer did not address the waiver issue in their brief, at oral argument the question of Principal's ability to assert non-coverage arose again. Principal countered General American's "waiver" allegation by pointing to a provision in the written agreement described above between Principal and General American/Lewer which states that "[t]he parties hereto specifically and expressly reserve any and all rights and defenses available to them respectively." Principal argues that, under this language of the agreement, it has the right to assert the coverage issue. We disagree.

A careful review of the declaratory judgment complaint filed by Principal reveals that Principal asserts therein that "[e]ach party, that is Principal and [General American/Lewer,] have taken the position that their plans are secondary." Principal further states that the purpose of the action is to adjudicate "which party's health insurance coverage is primary and which secondary."

8

In its prayer, Principal asks merely that the court "adjudicate the rights and liabilities of the parties *pursuant to the Coordination of Benefits Provisions.*" (Emphasis added.) In fact, the coordination of benefits provisions were the *only* provisions under which Principal asked the court to adjudicate the rights and liabilities of the parties. Nowhere in the declaratory judgment complaint has Principal pleaded coverage as an issue. The motion for summary judgment wherein Principal initially asserted noncoverage does not qualify as a pleading. *See* Federal Rules of Civil Procedure 7(a). Moreover, Principal never asserted coverage as an affirmative defense. In fact, as noted above, Principal specifically stated in their complaint that their contention was that the Principal plan provided *secondary* coverage. By this assertion, Principal implicitly acknowledged that there was in fact some sort of coverage available for Justin, albeit secondary.

Principal effectuated a compromise of the state court litigation and thereby avoided possible exposure on "bad faith" penalties and attorney's fees; in exchange, it agreed to pay half of the medical bills and institute a declaratory judgment action to determine whether its coverage for Justin is *primary* or *secondary.* Based upon the parties' agreement, the coordination of benefits issue was to be the limited question before the lower court. In fact, the agreement specifically provided: "As a result of differing interpretations of *each party's coordination of benefits provisions,* Principal Health Care and The Lewer Agency, on behalf of General American Life Insurance Company have taken the position

of *secondary health care carriers....*" (Emphasis added.) Principal cannot seek now in this appeal, nor did it have the right to assert in the lower court via summary judgment motion, relief it did not pray for or otherwise plead. While it *may* be true that Principal reserved the *right* to assert coverage as a defense by virtue of the reservation clause in the agreement with General American/Lewer, in never *asserted* this right via its pleadings in the declaratory judgment action. Thus, we hold that Justin was covered as Pepper's dependent child under the Principal policy. The only question that remains is whether that coverage is primary or secondary.

*The coordination of benefits provision*

Although the magistrate granted summary judgment in favor of General American, he did so on the basis of the coordination of benefits provision of the Principal policy, ruling that the Principal plan provided primary coverage for Justin.

The main point of contention surrounding the coordination of benefits provisions of the Principal plan is whether the so-called "birthday rule" or "custody rule" applies to determine whether the plan provides primary coverage. Under the "birthday rule," the Principal plan, by its own terms, would provide primary coverage because Pepper's birthday precedes Plauche's in the calendar year. Under the "custody rule," the Principal plan would require that benefits be determined under Plauche's plan *before* they would be determined under the Principal plan. Specifically, these provisions of the Principal plan (referred to as "the Health Plan"

10

therein) state as follows, in pertinent part:

> 2) The Health Plan determines its order of benefits using the first of the following rules which applies:
>
> ....
>
>> b) Except as stated in paragraph 4.1.C.2.c, when the Health Plan and another Plan cover the same child as a Family Dependent of different persons, called "parents":
>>
>>> 1. The benefits of the Plan of the parent whose birthday falls earlier in a year are determined before those of the Plan of the parent whose birthday falls later in the year
>>
>> ....
>>
>> c) If two or more Plans cover a Member as a dependent child of *divorced or separated parents,* benefits for the child are determined in this order:
>>
>>> 1. First, the Plan of the parent with *custody* of the child, ...

(Emphasis added.)[3]

Principal contends that, because Pepper and Plauche were never married and living together, they should be viewed as "separated parents" under the COB provision of the Principal policy and therefore the "custody rule" applies. Because Plauche has had physical custody of Justin at all times, her plan would provide primary coverage under the "custody rule."[4] General American/Lewer

---

[3]The corresponding provision in the General American policy is substantially the same as the Principal provision, containing the more general "birthday rule," except in cases where the parents are "separated or divorced and the parent with custody of the child has not remarried," in which case the custody rule will apply.

[4]The magistrate opined *in dicta* that during the time Justin was in the hospital, he was not in the custody of either parent. We disagree. We hold that at all times relevant herein, Justin has been in the custody of his mother. There is no evidence that

argues that Pepper and Plauche are not "divorced or separated" because they were never married, and therefore the "custody rule," which is an exception to the more general "birthday rule," does not apply. Pepper's birthday is April 29th, and Plauche's birthday is December 9th. Because Pepper's birthday falls earlier in the year, General American contends that the Principal plan should provide primary coverage.

The magistrate agreed with General American that Pepper and Plauche cannot be "separated" because they have never been married. He cited a case from another jurisdiction[5] as well as Louisiana Civil Code art. 2047[6] in support of his conclusion and explained

there has ever been any legal determination of custody; however, Plauche as a matter of fact always has had physical custody of Justin. We have no difficulty determining that, in the absence of a legal determination of custody to the contrary, that Justin was in the custody of his mother as long as he remained at the hospital, where she had given birth to him. After he was released from East Jefferson, Justin went to live with Plauche, where he has remained. Plauche is the parent with custody of the child under the "custody rule" of the Principal plan.

[5]*Humana Health Insurance Company of Florida, Inc. v. Halifax Health Network,* 579 So.2d 384 (Fla.Dist.Ct.App. 5th Dist.1991) (parents who were never married and never lived together cannot be said to be "divorced" or "separated"). We decline to follow *Humana,* particularly in light of the fact that it is a Florida case, not a Louisiana case. Moreover, *Humana* involved an interpretation of an insurance statute, not an insurance policy, and is therefore factually distinguishable. Also, even case law *from Louisiana courts* technically is not binding in this civilian jurisdiction, because Louisiana does not recognize *stare decisis.* However, as a practical matter, lower courts often do follow the dictates of higher courts *within their jurisdiction,* but it is because they *choose* to do so, not because they must.

[6]As noted above, Louisiana Civil Code Article 2047 is a rule of contract interpretation which provides that "[t]he words of a contract must be given their generally prevailing meaning." Louisiana, being the only civil law jurisdiction among the fifty states, is unique in that its approach to solving most legal

that the generally prevailing meaning of the word "separated" in the context of the phrase "dependent child of divorced or separated parents" is married but living separately. Because he felt Justin could not be construed as a "dependent child of divorced or separated parents," the magistrate held that the "custody rule" did not apply, and thus that the more general "birthday rule" applied. Under the birthday rule, the Principal plan would provide primary coverage. Accordingly, the magistrate granted summary judgment in favor of General American/Lewer.

On appeal, Principal contends that the "custody rule" should apply in lieu of the "birthday rule" because Pepper and Plauche are "separated parents" in that they have never been married. Principal points out that the general, common sense definition of the term "separated" means "not together." Moreover, Principal points out that the arbitrary "birthday rule" is only appropriate when parents are not "separated" or divorced, i.e., when they *are* living together, because assumedly both parents will have an equal interest in, and responsibility for, the health care provided to

---

questions begins first and foremost with a review of the Louisiana Civil Code. The Civil Code is thus the civilian's "Bible." Jurists in common law jurisdictions, on the other hand, usually begin with a review of the case law on a particular issue. The late Judge Alvin B. Rubin lamented that Louisiana federal courts sitting in diversity often fail to employ civilian methodology, although they are *Erie*-bound to do so. In the instant case, the magistrate's efforts to be true to *Erie* and employ civilian interpretation are laudable, although we disagree with his conclusion. For Judge Rubin's delightful and enlightening discussion of the hazards that Louisiana federal courts present to the civilian tradition, see Alvin B. Rubin, *Hazards of a Civilian Venturer in a Federal Court; Travel and Travail on the Erie Railroad,* 48 La.L.Rev. 1369 (1988).

the child.  When parents are "separated" or divorced, however, the rules state that the plan of the parent with custody is primary. Thus, Principal contends that the obvious intent of the COB provision is to impose primary liability on the plan of the parent residing with the child when the two parents do not live together. We agree.

Louisiana Civil Code Article 2048, cited above, provides that "words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract."  Also, Article 2050, cited above, provides that "[e]ach provision in a contract must be interpreted in light of the other provisions...."  We interpret the word "separated" as used in the "custody rule" of the Principal plan to connote people who do not reside together.  This interpretation is most consistent with the overall purpose of the two rules governing which plan is primary in the event that a child is covered under both parents' plans:  if the parents are living together with the child, the arbitrary birthday rule is an acceptable way of determining primary coverage between two parents who have equal contact with the child and an equal interest in its medical care and insurance coverage;  if the parents are not living together, the parent with custody of the child has more contact with the child and perhaps a greater interest in the medical care it receives and the insurance coverage afforded to it.  In this case, Justin's mother always has had custody of him rather than his father.  Accordingly, the Principal plan indicates that it provides only secondary coverage for Justin

14

if he is covered under Plauche's plan.  Consequently, we hold that primary coverage for Justin is provided by General American, the insurer of Plauche.

*CONCLUSION*

For the foregoing reasons, the magistrate's summary judgment in favor of General American and Lewer is REVERSED.  Under the coordination of benefits provisions of the Principal plan, benefits under the General American plan are to be determined before those under the Principal plan.  Having construed the language of the policies in accordance with civilian methodology, we hold that primary medical insurance coverage for Justin is provided by General American Life Insurance Company.  Judgment is here rendered in favor of Principal Health Care of Louisiana, Inc.  Costs of the appeal are assessed to General American Life Insurance Company through the Lewer Agency.

REVERSED AND RENDERED.