**FRANKLIN ELECTRIC CO., INC.,**
Appellant/Cross–Appellee,

v.

**LUTHERAN HOSPITAL OF INDIANA,**
Bluffton Regional Medical Center,
Appellee/Cross–Appellant,

and

City of Fort Wayne Employee
Benefit Plan, Appellee.

No. 02A04–0907–CV–381.

Court of Appeals of Indiana.

March 31, 2010.

Daniel D. Bobilya, Andrea R. Trevino, Bobilya & Reidy LLP, Fort Wayne, IN, Attorneys for Appellant/Cross–Appellee.

Douglas Dormire Powers, Powers Law Offices, LLC, Fort Wayne, IN, Attorneys for Appellees/Cross–Appellants Lutheran Hospital of Indiana and Bluffton Regional Medical Center.

Alan Verplanck, Timothy A. Manges, James P. Fenton, Eilbacher Fletcher, LLP, Fort Wayne, IN, Attorneys for Appellee City of Fortwayne Employee Benefit Plan.

## OPINION

ROBB, Judge.

### Case Summary and Issues

Lutheran Hospital of Indiana ("Lutheran") and Bluffton Regional Medical Center ("Bluffton") filed a declaratory judgment action seeking to determine whether Lori Brown's insurance, Franklin Electric Company, Inc. Medical Plan for Eligible Employees and Early Retirees ("Franklin"), or Robert Kirby's insurance, the City of Fort Wayne Employee Benefit Plan ("City"), was responsible for payment of medical expenses incurred by Lori and Robert's son, Jayden, following his birth on July 12, 2003. Franklin appeals the trial court's grant of summary judgment to the City upon finding Franklin primarily responsible for Jayden's medical expenses from the date of his birth through May 24, 2004, raising two issues: whether the trial court had jurisdiction to entertain this matter and whether the trial court properly interpreted the coordination of benefits provision. Lutheran and Bluffton cross-appeal the trial court's denial of their motion for assessment of attorney's fees against Franklin, raising the issue of whether the trial court abused its discretion in finding Franklin's conduct "substantially justified." Concluding that the trial court erred in finding Franklin's plan primary, but properly denied the request for attorney's fees, we reverse the entry of summary judgment for the City and remand for entry of summary judgment in favor of Franklin, but affirm the trial court in all other respects.

### Facts and Procedural History [1]

At all times relevant to this litigation, Lori was employed by Franklin Electric Company, Inc., and covered by its employee welfare benefit plan. Robert was employed by the City of Fort Wayne and covered by its governmental plan. Lori and Robert have never been married and they have never lived together. On July 12, 2003, Lori prematurely gave birth to Jayden at Lutheran. Lutheran provided medical services attendant to the birth and Jayden's care for approximately two months thereafter in the total amount of $148,102.34. On September 15, 2003, October 16, 2003, and January 14, 2004, Bluffton provided medical services to Jayden in the total amount of $3,267.20. Lori signed an assignment of rights form with each hospital when seeking medical services. Jayden was a covered beneficiary under both Franklin's and the City's plans at all relevant times.

On August 13, 2003, Lutheran submitted an interim bill to the City in the amount of $90,425.07 for services rendered to Jayden. The City made a partial payment of $60,584.80, but subsequently informed Lutheran that under its coordination of benefits terms, Franklin was the primary plan and the City was secondary. Lutheran then submitted a final bill to Franklin in the amount of $148,102.34 (including the $90,425.07 previously billed to the City). Franklin made a partial payment of $110,542.18, and Lutheran thereafter refunded the City's earlier partial payment.

Also in August 2003, an action was instituted in Wells Circuit Court to determine Jayden's paternity. On March 16, 2004, the Wells Circuit Court entered an order in the paternity action (the "paternity order") granting custody of Jayden to Lori,

1. We held oral argument in this case on March 5, 2010, at Culver Cove Resort and Conference Center in Culver, Indiana, as part of the Indiana State Bar Association's annual Women's Bench Bar Retreat. We express our appreciation to the State Bar and the organizers of the Retreat for the invitation and to the attorneys for their capable presentations.

granting parenting time to Robert, and ordering Robert to "provide medical, dental, and optical insurance for the minor child if available through his place of employment, and [Robert's] insurance shall be designated as the primary insurance." Appellant's Appendix at 68. The paternity order was provided to and rejected by the City "because it is not a valid Qualified Medical Child Support Order (QMCSO) or a valid National Medical Support Notice (NMSN)." *Id.* at 174. In the same letter rejecting the paternity order, the City's Benefits Administrator instructed that the insurance paragraph quoted above "should be removed or restated that the Coordination of Benefits (COB) provisions of the Plans will be used to determine which Plan is primary and which Plan is secondary." *Id.* Wells County subsequently issued an NMSN that was received by the City on May 24, 2004. The City accepted the NMSN as a QMSCO on May 26, 2004, noting Jayden was "currently enrolled in the [City] plan as a dependant of the participant" and "[c]overage is effective as of 7/12/03." *Id.* at 179. On July 16, 2004, Donna Emshwiller of the Wells County Title IV-D Office sent a letter to the City's Benefits Administrator advising the provisions of the paternity order became effective on March 16, 2004, and "[c]ompliance of the provisions is expected to take place within 30 days of the Order." *Id.* at 181.

On October 4, 2004, nearly one year after its $110,542.18 payment to Lutheran, Franklin unilaterally reallocated the payment to other plan beneficiaries' accounts with Lutheran, leaving Jayden's account

again unpaid. Because "an issue has arisen as to whether [Robert's] insurance was to be designated as primary since the child's date of birth or since the date of the March 16, 2004 Order," *id.* at 275, a petition to clarify or modify the paternity order was filed in Wells County on October 20, 2004, by Trent Patterson, acting as counsel for Lori. On September 6, 2005, attorney Liberty Roberts of Collier–Magar & Roberts, P.C., filed an appearance as co-counsel on behalf of Lori. Also on September 6, 2005, Kenneth Collier–Magar of Collier–Magar & Roberts, P.C., co-signed with Patterson a Memo in Support of Petition to Clarify or Modify. The paternity order was clarified on September 28, 2005 (the "clarified paternity order"), to designate Robert's insurance "as the primary insurance for Jayden Kirby from the date when coverage for Jayden Kirby began on July 12, 2003." *Id.*

In early 2007,[2] Lutheran resubmitted its bill to the City; the City denied the claim. Lutheran resubmitted the claim to Franklin; Franklin denied the claim on the basis that under its coordination of benefits terms, the City was the primary plan. Lutheran exhausted the administrative claims procedures under Franklin's plan and the City waived its administrative claims requirements. Bluffton encountered a similar course of events in seeking payment of the $3,276.20 owed to it for services provided to Jayden.[3]

Due to this wrangling over which plan was responsible for expenses from Jayden's birth and care prior to May 24,

---

**2.** There is no explanation apparent on the face of the record for why Lutheran did not resubmit its bill for over two years after Franklin withdrew its payment.

**3.** Although Lutheran and Bluffton individually pursued payment of their bills, they are both members of the Lutheran Health Network, and they filed a single complaint for relief and were represented by a single attorney in the trial court, as they are on appeal. Lutheran and Bluffton advance the same legal argument on appeal, and we therefore refer to them collectively as the "Hospital" hereinafter.

2004,[4] the Hospital's bills for that period remained unpaid. The Hospital therefore filed the instant declaratory judgment action against Franklin and the City in Allen Superior Court on November 13, 2007, seeking to determine the "rights, duties and obligations of the parties with respect to the payment of benefits under the Franklin [p]lan and/or the City [p]lan." *Id.* at 19. On November 26, 2007, Kenneth Collier–Magar and Liberty Roberts of Collier–Magar & Roberts, P.C., filed appearances on behalf of Franklin. Franklin responded to the Hospital's complaint by filing a motion to transfer to Wells Circuit Court because of the paternity action there. The City responded and filed a cross-claim against Franklin alleging Franklin was primary for coverage purposes. After the trial court denied Franklin's motion to transfer, all parties filed motions for summary judgment. The trial court entered the following order, in pertinent part:

*JURISDICTION, VENUE
AND STANDING*

1. This Court has jurisdiction of [the Hospital's] claims. ERISA § 502(e)(1). Venue is properly in this Court. Indiana Rules of Trial Procedure, T.R. 75.

2. ERISA § 502(A)(1)(B) permits an assignee to enforce rights of an assignor to benefits under a welfare benefit plan.

*FINDING OF FACTS*

* * *

3. At all times relevant to this dispute, Lori, as an employee of [Franklin] was eligible for reimbursement of covered claims through the Franklin Plan.

4. At all times relevant to this dispute, Robert was eligible for reimbursement of Jayden's covered claims through the City Plan.

5. Both the Franklin and City Plans have provisions coordinating their benefits ("COB" provisions) with other existing and applicable benefits.

* * *

10. Under the Franklin Plan, coverage for Jayden is primary with the plan of whichever parent has the earlier calendar birthday. However, this rule only applies to the child of *married* parents and Jayden's parents were never married.

11. The City Plan contains a nearly identical COB provision, but, again, would apply only to the children of married parents.

12. The Franklin Plan contains another COB rule (COB Rule 3) holding that the custodial parent's coverage is primary.

* * *

16. On relation of the Indiana Family and Social Services Administration, Division of Family and Children [C]hild Support Bureau, Lori Brown obtained an Order from the Wells Circuit Court on March 16, 2004.

17. On that date (March 16, 2004) Robert Kirby was ordered, *inter alia,* to "provide medical, dental, and optical insurance for the minor child if available through his place of employment, and (his) insurance shall be designated as the primary insurance."

18. Thereafter, on September 28, 2005, the Wells Circuit Court issued an Order Clarifying its March 16, 2004 Order.

19. In this supplemental Order, the Court ordered that "Respondent father's

---

**4.** The City conceded at oral argument that it was primary from the date of the properly completed NMSN.

insurance is to be designated as the primary insurance for Jayden Kirby from the date when coverage for Jayden Kirby began on July 12, 2003."

\* \* \*

21. The City Plan had no notice of the Wells Circuit Court proceedings before receiving the March 16, 2004 Order. The City and the City Plan were not parties to the proceedings in Wells Circuit Court.

22. A National Medical Support Notice was issued, thereafter, on May 14, 2004. After receipt, the City Plan confirmed that Jayden was enrolled and has had insurance for covered expenses from and of the date of the Notice.

\* \* \*

### CONCLUSIONS OF LAW

28. The law is with the Defendant City Plan and against the Defendant Franklin Plan.

\* \* \*

32. Under the Franklin Plan COB rule (COB Rule 3) Lori Brown's employer, Franklin Electric, was primarily responsible for Jayden's medical bills as Lori was, at all relevant times, the custodial parent.

33. The only means available for lawfully modifying coverage in an ERISA welfare benefit (group health) plan is through execution of a Qualified Medical Child Support Order ("QMCSO") or a National Medical Support Notice ("NMSN").

34. Neither of the Orders issued by the Wells Circuit Court fulfill the role of either a QMCSO or a NMSN.

35. Moreover, the Franklin Plan's claims of issue preclusion and *res judicata* fail because there was neither identity of the parties nor issues in the Wells Circuit Court with the parties and issues

in the case at bar. Franklin Plan's assertions that Jayden Kirby was "in privity" with other parties and, by implication the other parties had notice does not meet notice required by appropriate due process nor by analogy to uninsured motorist cases. Moreover, Robert Kirby was not given notice of hearing prior to the Wells Circuit Court issu[ing] its Order of September 28, 2005. The City of Fort Wayne was not joined as a party nor notified prior to the issuance of the September 28, 2005 Order.

36. Even if the Wells Circuit Court orders were appropriate vehicles for establishing primary coverage (i.e. ERISA preemption rules did not apply), those orders could not retroactively create coverage and, in this case, most if not all of the covered charges at issue were incurred before either Order of the Wells Circuit Court.

### DECLARATORY JUDGMENT

Pursuant to Trial Rule 57, the Court now enters its Declaratory Judgment in this cause. The Court now grants the Motion for Summary Judgment filed by Defendant and Cross–Claim Plaintiff, City Plan[,] and denies the Motion for Summary Judgment filed by Defendant and Cross–Claim Defendant[,] Franklin Plan.

In so doing, it is hereby Ordered, Adjudged and Declared that Defendant and Cross–Claim Defendant Franklin Plan is primarily responsible for the charges incurred by and [on] behalf of Jayden Kirby for medical care supplied by the [Hospital] herein from the date of birth of Jayden Kirby of July 12, 2003 until the date of May 24, 2004, the date upon which Defendant City Plan received a properly completed NMSN.

*Id.* at 10–13 (citation omitted).

Following entry of this order, Franklin filed a motion to reconsider and the Hospi-

tal filed a motion for assessment of attorney's fees against Franklin. The trial court subsequently entered an order denying Franklin's motion to reconsider, awarding damages to Lutheran and against Franklin in the amount of $148,102.34, awarding damages to Bluffton and against Franklin in the amount of $3,267.20, and denying the Hospital's motion for assessment of attorney's fees because "the position taken by [Franklin] was 'substantially justified' in this very complex case." *Id.* at 15–16. Franklin now appeals the trial court's grant of the City's motion for summary judgment and denial of its own on the coverage issue; the Hospital cross-appeals the trial court's denial of its motion for assessment of attorney's fees.

*Discussion and Decision*

I. Franklin's Appeal of Summary Judgment

A. Standard of Review

■ Summary judgment is appropriate only when the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). When the material facts are undisputed and the question presented is a pure question of law, we review the matter *de novo*. *Wright v. Am. States Ins. Co.*, 765 N.E.2d 690, 692 (Ind.Ct.App.2002). We examine only those materials properly designated by the parties to the trial court. *Trietsch v. Circle Design Group, Inc.*, 868 N.E.2d

812, 817 (Ind.Ct.App.2007). The party appealing the trial court's summary judgment decision has the burden of persuading us that the decision was erroneous. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 908 (Ind.2001).

■ We are not bound by the trial court's findings and conclusions in support of its summary judgment decision, although "they aid our review by providing the reasons for the trial court's decision." *GDC Envtl. Servs. Inc. v. Ransbottom Landfill*, 740 N.E.2d 1254, 1257 (Ind.Ct. App.2000). Moreover, the fact the parties made cross-motions for summary judgment does not alter our standard of review: we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Hartford Accident & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind.Ct.App. 1997), *trans. denied.*

B. Jurisdiction

■ Franklin first challenges the trial court's jurisdiction to hear this matter, as Franklin's plan is an ERISA-controlled employee welfare benefit plan generally subject to exclusive federal jurisdiction.[5] ERISA establishes a detailed federal framework for the regulation of pension and welfare benefit plans. *Bennett v. Indiana Life & Health Ins. Guar. Ass'n*, 688 N.E.2d 171, 179 (Ind.Ct.App.1997), *trans. denied.* In order to achieve uniformity in laws applicable to such plans, ERISA "shall supersede any and all State laws insofar as they may now or hereafter

5. ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits. . . ." 29 U.S.C. § 1002(1). ERISA does not apply to government sponsored benefit plans, such as

the City's. *See* 29 U.S.C. § 1002(32) (defining "governmental plan" as "a plan established or maintained for its employees by . . . the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing."); 29 U.S.C. § 1003(b)(1) (excluding governmental plans from ERISA's coverage).

relate to any employee benefit plan...." 29 U.S.C. § 1144(a). Federal district courts have exclusive jurisdiction of civil ERISA actions, *see* 29 U.S.C. § 1132(e)(1), except in two instances: state and federal courts have concurrent jurisdiction of actions "brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; ... [or] by a State to enforce compliance with a qualified medical child support order...." 29 U.S.C. § 1132(a)(1)(B), (a)(7). When a proper claim is brought in state court, federal law nonetheless applies. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (Congress expected "that a federal common law of rights and obligations under ERISA-regulated plans would develop ...."); *see Lindsay v. Cottingham & Butler Ins. Servs., Inc.,* 763 N.W.2d 568, 573 (Iowa 2009) ("[I]f the ... plan is covered by ERISA, we must apply federal law rather than state law....").

■ Franklin contends the Hospital is neither a participant nor a beneficiary, and the Allen County Court therefore did not have jurisdiction pursuant to the exception delineated in 29 U.S.C. § 1132(a)(1)(B). ERISA defines "participant" as "any employee ... of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer...." 29 U.S.C. § 1002(7). ERISA defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to benefits thereunder." 29 U.S.C. § 1002(8). Lori is unquestionably a participant in Franklin's plan. The Hospital, by virtue of an assignment of rights signed by Lori when she sought medical services, is "designated by a participant" and "entitled to [her] benefits"—in other words, the Hospital is a beneficiary as that term is defined by ERISA. *See* Appellant's App. at 90 ("I hereby assign Lutheran Hospital and the attending physician(s) ... all hospital and physician(s) expense benefits which are due or become due to me as a result of medical services provided," signed by Lori on July 12, 2003); *id.* at 108–09 ("I assign to Bluffton Regional Medical Center all insurance payments due as a result of my treatment," signed by Lori on October 16, 2005, and January 15, 2004). Under these circumstances, 29 U.S.C. § 1132(a)(1)(B) "supplies jurisdiction when a provider of medical services sues as an assignee of a participant." *Kennedy v. Connecticut General Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir.1991).[6] As an assignee is a beneficiary within the meaning of 29 U.S.C. § 1132(a)(1)(B), and as state courts have concurrent jurisdiction over claims brought pursuant to that section, the trial court properly exercised jurisdiction over the Hospital's declaratory judgment action.

C. Coordination of Benefits Provision

■ ERISA provides no specific guidance on coordination of benefits issues. *Trustees of Southern Illinois Carpenters Welfare Fund v. RFMS, Inc.,* 401 F.3d 847, 849 (7th Cir.2005). The federal common law rule applicable to resolving priority of coverage disputes between an ERISA plan and a non-ERISA plan dictates that a conflict between the two will be resolved in favor of the ERISA plan. *Great–West Life & Annuity Ins. Co. v. Allstate Ins.*

---

**6.** Franklin has not designated any evidence that its plan prohibits assignment. *See Kennedy,* 924 F.2d at 700 (noting that jurisdiction will be lacking only if the language of the plan is clear that assignment does not comport with the plan).

*Co.,* 202 F.3d 897, 900 (6th Cir.2000). Franklin's and the City's plans have coordination of benefits provisions that are substantially similar, however, and the question is not, therefore, which of two conflicting coordination of benefits provisions should apply, but rather how to interpret the provision. *Cf. Trustees of Southern Illinois Carpenters Welfare Fund,* 401 F.3d at 850 ("[T]he relevant provisions of these ... plans are compatible ...; accordingly, we will enforce the plans as written."). Where the terms of an ERISA-governed plan are unambiguous, we do not look beyond the four corners in interpreting its meaning. *Neuma, Inc. v. AMP, Inc.,* 259 F.3d 864, 873 (7th Cir.2001). Because ERISA instructs that plan descriptions should be "written in a manner calculated to be understood by the average plan participant," 29 U.S.C. § 1022(a)(1), terms should be given their ordinary, not specialized, meanings. *Brewer v. Lincoln Nat. Life Ins. Co.,* 921 F.2d 150, 154 (8th Cir.1990), *cert. denied,* 501 U.S. 1238, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991).

Franklin's coordination of benefits provision states, in relevant part:

> A Plan without a Coordination of Benefits provision is always the primary plan. If all Plans have such a provision:

> * * *

> 2. Dependent children of parents not separated or divorced: the Plan covering the parent whose birthday falls earlier in the year pays first. The Plan covering the parent whose birthday falls later in the year pays second.

> 3. Dependent children of separated and divorced parents: When parents are separated or divorced, the following rules apply:

>> a. The plan of the parent with custody pays first;

>> b. The plan of the spouse of the parent with custody (the step-parent) pays next; and

>> c. The plan of the parent without custody pays last.

> However, if the specific terms of a qualified Medical Child Support Order state that one of the parents i[s] responsible for the child's health care expenses, that Plan pays first.

> * * *

> 5. If none of the above rules determine the order of benefits, the Plan which has covered a person longer pays first. The Plan covering that person for the shorter time pays second.

Appellant's App. at 47–48.[7] The trial court applied Rule 3 for "[d]ependent children of

7. The City's coordination of benefits provision provides:
> 2. The plan which covers the claimant, other than a child whose parents are separated or divorced, as a dependent of a person whose date of birth, excluding year of birth, occurs earlier in a Calendar Year will be paid prior to the benefits of a plan which covers such claimant as a dependent of another person with a birthday later in the Calendar Year....
> 3. The following rules will apply when the claimant is a dependent child whose parents are separated or divorced:
>> a. If the parent with legal custody of the child has not remarried, the benefits of the plan covering the child as a dependent of that parent will be determined prior to the benefits of the plan covering the child as a dependent of the parent who does not have custody.
>> b. If the parent with legal custody of the child has remarried, the benefits of the plan covering the child as a dependent of the parent with custody will be determined prior to the benefits of a plan covering the child as a dependent of the step-parent. The benefits of the plan covering the child as a dependent of the stepparent will be determined prior to the benefits of a plan covering the child as a dependent of the parent without custody.

separated or divorced parents" and found that since Lori had custody of Jayden, Franklin's plan was responsible for paying the Hospital's bill. Franklin argues the trial court erroneously applied this provision for two reasons. First, because Lori and Robert have never been married, they are not "separated" and the provision does not apply at all; rather, the "fallback provision" of Rule 5 should apply to make the City the primary insurer because Robert has been covered by his plan longer.[8] Second, even if Lori and Robert can be considered "separated," Franklin contends the trial court should have applied the court order exception to Rule 3 and found the Wells County orders requiring Robert to be responsible for providing insurance for Jayden make the City the primary insurer.

█ The City contends that as it is uncontroverted that Lori and Robert were never married and never cohabited, they are "separated" in that they are "not together." In support of its position and the trial court's decision, the City cites *Principal Health Care of Louisiana, Inc. v. Lewer Agency, Inc.*, 38 F.3d 240 (5th Cir.1994). The facts of *Principal Health Care* are very similar to the facts of this case: mother and father, never having been married or lived together, had a child who was born several months premature and incurred substantial medical expenses. Each parent added the child to his or her respective employee health care plan and a dispute arose between the plans as to which plan provided primary coverage for the child's medical expenses. The coordination of benefits provision provided that when two plans cover the same child as a dependent, the plan of the parent whose birthday falls earlier in the year is primary, except if two plans cover a child as a dependent child of divorced or separated parents, the plan of the parent with custody of the child is primary. *Id.* at 244–45. If the birthday rule applied, the father's plan was primary; if the custody rule applied, the mother's plan was primary. The Fifth Circuit, applying the Louisiana civil code, interpreted the word "separated" as used in the custody rule "to connote people who do not reside together" as opposed to "married but living separately." *Id.* at 245–46. The court found its interpretation to be most consistent with the overall purpose of the coordination of benefits rules:

> [I]f the parents are living together with the child, the arbitrary birthday rule is an acceptable way of determining primary coverage between two parents who have equal contact with the child and an

---

c. Items 1. and 2. above will not apply when the financial responsibility for medical care expenses is established by a court decree. In such case, the benefits of the plan covering the child as a dependent of the parent with such responsibility will be determined prior to the benefits of any other plan.

4. To the extent the above rules do not establish the order of benefit determination, the benefits of the plan which has covered the claimant for the longer period of time immediately prior to the incurred date of the claim shall be determined first.

Appellant's App. at 51.

8. The City asserts Franklin waived the issue of whether Rule 5's fallback provision applies by not raising it to the trial court prior to its motion to reconsider the trial court's judgment. *See Troxel v. Troxel*, 737 N.E.2d 745, 752 (Ind.2000) ("A party may not raise an issue for the first time in a motion to correct error or on appeal."). Although Franklin's motion for summary judgment primarily focuses on the effect of the Wells County paternity order on the application of Rule 3, Franklin did designate the entirety of both its and the City's coordination of benefits provisions, which both contain the fallback provision, and notes in its accompanying memorandum that Jayden's parents "were neither 'separated [n]or divorced.'" Appellant's App. at 143. Although the argument was not elaborate, Rule 5 was squarely before the trial court and we cannot say Franklin waived the issue.

equal interest in its medical care and insurance coverage; if the parents are not living together, the parent with custody of the child has more contact with the child and perhaps a greater interest in the medical care it receives and the insurance coverage afforded to it.

*Id.* at 246. Accordingly, the court held the parents were separated and the custody rule applied to make the mother's plan primary. *Id.*

In *Humana Health Ins. Co. of Florida, Inc. v. Halifax Health Network,* 579 So.2d 384 (Fla.Dist.Ct.App.1991), however, the opposite result was reached. The facts again are very similar to this case: the mother and father were not married and never lived together. Their child was born prematurely and incurred substantial medical expenses. Each parent added the child to his or her respective insurance plan as a dependent; the respective carriers disputed which plan was primary. The applicable coordination of benefits provision was found not in the policies but in a Florida statute providing that if two policies cover the same child as a dependent of different parents, the plan of the parent whose birthday falls earlier in the year is primary, except the plan of the parent who has custody is primary for a dependent child of "divorced or separated parents." *Id.* at 385 (citing Fla. Stat. § 627.4235). Because the mother and the father were never married and never lived together, "they cannot be said to be 'divorced' or 'separated.'" *Id.* Therefore, the birthday rule applied, and the father's carrier was primary. *Id.*

We agree with the result reached by the court in *Humana.*[9] In Indiana, "separated," in the context of families and especially when coupled with the term "divorced,"

has a very specific meaning with the precondition that the parties be married. *See* Ind.Code § 31–15–3–3 ("Legal separation shall be decreed upon a finding by a court that conditions in or circumstances of the marriage make it currently intolerable for both parties to live together; and that the marriage should be maintained."). "Separate" is defined as "to part by legal separation; to sever conjugal ties with; to sever contractual relations with" or "to cease to live together as a married couple." Merriam–Webster Online Dictionary, www.merriam-webster.com/dictionary/separated (last visited March 18, 2010). The coordination of benefits provision makes the birthday rule applicable to dependent children of parents not separated or divorced, the custody rule (and court order exception) applicable to dependent children of parents who are separated or divorced, and the length of coverage rule applicable to every situation not covered by one of those rules. Thus, the choice is not simply between covering Jayden either as the dependent of parents who are married or as the dependent of parents who are separated or divorced. If those were the only two choices, there would be a better argument that Lori and Robert should be considered "separated," since clearly they have never been married to each other. The inclusion of a separate default provision makes such an interpretation unnecessary. Moreover, if we interpret "separated" to mean "not living together," Rule 5 would apply only to a situation where the parents are living together but have never married. We find it unlikely the language of Rules 2 and 3 was intended to cover every parental relationship other than one specific arrangement. In interpreting a contract, we endeavor to

---

9. *Principal Health Care* and *Humana* appear to be the only two cases to have addressed

what "separated" means in such a context.

construe language in a contract "so as not to render any words, phrases, or terms ineffective or meaningless." *The Winterton, LLC v. Winterton Investors, LLC*, 900 N.E.2d 754, 759 (Ind.Ct.App.2009), *trans. denied.* Thus, it makes more sense that the drafters intended Rules 2 and 3 to cover those parents who were or had been married and Rule 5 for those who never had married, whether living together or not.

We also note an opinion letter by attorney Thomas Markle designated in support of the City's motion for summary judgment states "[t]he problem in applying [Rule 3] in this situation is that the parents are not 'separated or divorced' since they were never married and, in fact, apparently never cohabited together." Appellant's App. at 169. Markle notes Indiana did not adopt the National Association of Insurance Commissioners 1995 revision of the model language for coordination of benefits provisions, which reads: "If the parents are not married or separated (whether or not they were ever married) are [sic] divorced...." *Id.* The 2000 version of the Indiana regulation regarding order of benefits determination for dependents stated, in line with the Franklin and City plans, that "[i]f two (2) or more plans cover a person as a dependent child of divorced or separated parents[,]" the custody rule applied. 760 Ind. Admin. Code 1–38.1–14 (2000). The current Indiana regulation regarding order of benefits determination for dependents differentiates between "a dependent child whose parents are married or living together, whether or not they have ever been married," 760 I.A.C. 1–38.1–13, and "a dependent child whose parents are divorced or separated or do not live together, whether or not they have ever been married," 760

I.A.C. 1–38.1–14. That this change was made indicates "separated" standing alone was not meant to include persons who had never been married, and the regulation was amended to address a gap in the provision.

Given the accepted meaning of "separated" in Indiana domestic relations law, the subsequent amendment of Indiana regulations to make clear that "separated" and "not living together" are not synonymous, and the inclusion of a fallback provision that would otherwise have little or no application, we hold the trial court erred in finding Lori and Robert to be "separated" and applying Rule 3 to find Franklin's plan primary.[10]

That leaves Rule 5, the provision that applies if none other does. Rule 5 provides the plan "which has covered a person longer pays first." Appellant's App. at 48. "Person" is not defined by Franklin's coordination of benefits provision. *See id.* at 46–48. If we consider Jayden to be the "person" referred to in Rule 5, Rule 5 cannot serve its purpose of breaking a tie, so to speak, because Jayden was presumably covered by both the Franklin and the City plans since his date of birth. *See* Appellant's App. at 179 (City response to NMSN stating Jayden's coverage "is effective as of 7/12/03"). In order for Rule 5 to be meaningful in this situation, "person" must mean "policy holder." Because the Franklin plan uses the term "Covered Person" in various other provisions but only "person" in the fallback provision, our interpretation of "person" does no violence to the policy. The designated evidence indicates that Robert has been covered by the City plan since January 9, 1987, and Lori was covered by the Franklin plan beginning September 25, 1990. Rule 5 therefore makes the City's plan primary,

---

**10.** Because we hold Rule 3 is not applicable, we need not decide whether the court order exception to the rule should apply based on the Wells County orders.

as Robert has been covered by the City's plan longer than Lori was covered by Franklin's.

In applying the coordination of benefits provision, the trial court erred in applying the separated or divorced rule because Lori and Robert's relationship does not fit within that provision. The trial court therefore erred in granting summary judgment to the City and denying summary judgment to Franklin because the fallback rule makes the City's plan primary.

## II. The Hospital's Cross–Appeal of Denial of Attorney's Fees

### A. Standard of Review

■ The Hospital requested the trial court order Franklin to pay its attorney's fee pursuant to 29 U.S.C. § 1132(g)(1), which provides: "In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." A court's denial of attorney's fees and costs will only be reversed if the denial constitutes an abuse of discretion. *Nichol v. Pullman Standard, Inc.,* 889 F.2d 115, 121 (7th Cir.1989).

### B. Failure to Award Fees

■ The test for evaluating requests for attorney's fees and costs under section 1132(g)(1) asks "whether or not the losing party's position was 'substantially justified.' " *Bittner v. Sadoff & Rudoy Indus.,* 728 F.2d 820, 830 (7th Cir.1984), *overruled on other grounds* by *McCarter v. Ret. Plan for the Dist. Managers of Am. Family Ins. Group,* 540 F.3d 649 (7th Cir.2008). To "structure or implement" the inquiry, *Lowe v. McGraw–Hill Companies, Inc.,*

361 F.3d 335, 339 (7th Cir.2004), a five-factor test has emerged that considers: (1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions. *Bittner,* 728 F.2d at 829. In short, both tests ask the same question: "was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Quinn v. Blue Cross and Blue Shield Ass'n,* 161 F.3d 472, 478 (7th Cir.1998).

■ The Hospital asserts Franklin acted "in its own economic interest and ... improperly manipulated the ERISA-based device of a QMSCO to off-load its obligation to pay for the medical services at issue" rather than filing a timely action against the City to resolve the coordination of benefits issue. Brief of Appellees/Cross–Appellants [the Hospital] at 3. The Hospital points out Kenneth Collier-Magar was involved in obtaining the clarified paternity order as co-counsel for Lori and was also later involved in this declaratory judgment action as counsel on behalf of Franklin.[11] The Hospital notes that although the motion to clarify was ostensibly filed by Lori, Lori had nothing to gain by the order, as she was assured Jayden's medical expenses were covered and had no demonstrable interest in which plan covered them,[12] whereas Franklin clearly had

---

**11.** Collier–Magar represented Franklin through the summary judgment proceedings. By the time Franklin filed its motion to reconsider the trial court's order on summary judg-

ment, Franklin was represented by new counsel.

**12.** The Hospital notes the only potential impact on Lori—or on Robert, for that matter—

an interest in avoiding being primary on a nearly $150,000 medical bill. The motion to clarify the paternity order was filed in October of 2004 by Trent Patterson as counsel for Lori. Collier–Magar did not appear as co-counsel for Lori in the paternity action until September of 2005, when he co-signed with Patterson a memorandum in support of the motion to clarify. He appeared on behalf of Franklin after the Hospital filed the instant declaratory judgment action in November of 2007. The Hospital's attempt to cast Franklin in the role of behind-the-scenes manipulator of the paternity proceedings for its own benefit is not justified by any evidence in the record. Although the timing of Franklin's reallocation of its initial payment on October 4, 2004, and the filing of the motion to clarify on October 20, 2004, is notable, it would be nothing more than speculation to say Franklin prompted the action in the paternity proceeding.

Moreover, the Hospital has sought fees only from Franklin when it is clear both plans were obstinate in their refusal to accept primary responsibility for Jayden's medical expenses. Neither plan took the proactive step of initiating a declaratory judgment action to construe the coordination of benefits provisions. *See Winstead v. J.C. Penney Co., Inc.*, 933 F.2d 576, 577 (7th Cir.1991) ("Nothing is more common than overlapping insurance coverage, and a common way in which disputes over which insurance carrier is liable to a particular claimant are resolved is by a suit for a declaratory judgment brought by one of the carriers against the other."). The Hospital would lay that responsibility solely at Franklin's feet, but as both plans

denied primary coverage, we see no reason why Franklin alone should be faulted for not trying to resolve the conflict without involving the Hospital.

Franklin was entitled to vigorously defend its position that the City was primary, a position we have found to be correct, and the delay in payment cannot be attributed solely to Franklin.[13] We therefore cannot say the trial court abused its discretion in denying the Hospital's motion for assessment of attorney's fees against Franklin. In so holding, however, we are mindful that the Hospital was forced to initiate litigation and incur substantial fees in seeking to be paid for medical services it provided over six years ago and for which there is undisputed coverage. While Franklin and the City may have had a good faith dispute over which plan was primary, neither plan disputed that Jayden was a covered beneficiary or that he had incurred the expenses. As stated by the Ninth Circuit Court of Appeals in *PM Group Life Ins. Co. v. Western Growers Assur. Trust*, 953 F.2d 543, 548 (9th Cir. 1992):

> This is not a case where either of the employee benefit plans covered themselves with glory. While a legitimate dispute existed as to which one of them would have to pay up on this claim, there was little justification for holding [the hospital] and the insureds hostage to the resolution of a controversy that concerned them not at all.
>
> * * *
>
> The two plans should have taken whatever measures reasonably necessary to avoid imposing burdens and in-

might be a difference in the contribution obligation for single versus family coverage, but also notes there is no evidence regarding participant contributions.

13. As noted in footnote 2, for the two-plus years from Franklin's payment reallocation on October 4, 2004, to Lutheran's resubmission of its bill to the City on January 18, 2007, no party—including, apparently, the Hospital—took any action whatsoever.

conveniences on parties that had no stake at all in this dispute. Surely, the plans could have devised a means of paying off the debt they collectively owed, and then settled the accounts between themselves once the controversy was resolved.

*Conclusion*

The trial court erred in applying Rule 3 of the coordination of benefits provision to this situation, as Lori and Robert have never been married nor have they lived together and therefore could not be "separated." Instead, the trial court should have applied the fallback provision, pursuant to which the City's plan was primary. Accordingly, the trial court erred in granting summary judgment to the City and denying summary judgment to Franklin. As Franklin's position in this litigation was "substantially justified," the trial court did not abuse its discretion in denying the Hospital's motion for assessment of attorney's fees against Franklin. The trial court's grant of summary judgment for the City is reversed and the cause is remanded for the trial court to enter summary judgment for Franklin. The trial court's judgment is in all other respects affirmed.

Affirmed in part, reversed in part, and remanded.

RILEY, J., and BRADFORD, J., concur.