NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

——————————

No. 14-1524

——————————

IN RE:  KIRK S. STEPHAN,

Appellant

——————————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-13-cv-03937)
District Judge: Honorable Jerome B. Simandle

——————————

Submitted Under Third Circuit LAR 34.1(a)
November 17, 2014

Before: AMBRO, SCIRICA, and ROTH, Circuit Judges

(Opinion filed: December 11, 2014)

——————————

OPINION*

——————————

AMBRO, Circuit Judge

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Kirk S. Stephan appeals from an Order of the District Court affirming the Bankruptcy Court's denial of his Motion to Reclassify the Proof of Claim of Wells Fargo Bank, N.A. We affirm that Order.

## I.

Stephan has filed for relief under Chapter 13 of the Bankruptcy Code; Wells Fargo is a creditor. Stephan owns a home worth $320,000. He has two mortgages on that home, both from Wells Fargo and both secured by the home itself. The amount owed on the first mortgage exceeds the value of the home, and thus the full amount of the second mortgage is undersecured. The District and Bankruptcy Courts held that, pursuant to § 506(a) of the Bankruptcy Code, the second mortgage should be reclassified as an allowed unsecured claim and Wells Fargo should share in the Plan's distribution to the same extent as other general unsecured creditors. Stephan argues that the "claim is unenforceable against the debtor and property of the debtor[] under . . . applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). Specifically, he contends that under New Jersey law Wells Fargo must file a foreclosure action before it is allowed to collect any deficiency on its note. *See* N.J. Stat. Ann. § 2A:50-2 (West). Because it has not done so, Stephan states that the claim is unenforceable as a matter of state law.

## II.

The Bankruptcy Code defines a "claim" as a "right to payment, *whether or not such right is reduced to judgment . . . .*" 11 U.S.C. § 101(5)(A) (emphasis added). New Jersey's foreclosure procedure law provides the means by which Wells Fargo's lien could

2

be reduced to judgment absent the automatic stay that the Code imposes on such actions. *Id.* § 362. Section 502 disallows the claim if it is unenforceable, unless the only reason it is unenforceable is that it is "contingent or unmatured." A mortgage interest in a property that has not yet been foreclosed is a classic contingent right to payment. *See, e.g.*, *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991).

Stephan does not dispute that Wells Fargo would have a right to payment if it followed proper foreclosure proceedings, nor does he argue that it has done anything improper. He does not assert that he has a valid defense to any foreclosure action that Wells Fargo could take, which would arguably make the claim disallowable under § 502(b)(1). Nor does he argue that New Jersey's foreclosure procedure grants his estate any property rights under state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979). Rather he maintains that, by virtue of the automatic stay, Wells Fargo's right to payment no longer exists, as it cannot proceed to reduce its right to judgment pursuant to New Jersey law. Agreeing with Stephan would turn the automatic stay into a device that eliminates all contingent claims, a result that is in tension with the Bankruptcy Code's "broadest available definition of 'claim.'" *Johnson*, 501 U.S. at 83. To the extent that following the procedures of the Bankruptcy Code would prevent the parties from resolving their disputes under New Jersey law, that result is a natural and common consequence of the automatic stay. *See In re Graves*, 33 F.3d 242, 247 (3d Cir. 1994) ("Graves filed for bankruptcy on April 22, 1992. The Common Pleas Court issued its orders denying relief from the foreclosure and refusing to stay the ejectment on May 14, 1992. Consequently, the orders were void when issued.").

3

The final argument Stephan makes is that allowing a creditor to receive a greater distribution under Chapter 13 than Chapter 7 would be "bizarre." App. Br. at 2. But the statute he quotes in support of this argument requires plan confirmation if, among other conditions, the Chapter 13 distribution is "not less than" a hypothetical Chapter 7 distribution. 11 U.S.C. § 1325(a)(4). "More" is indeed "not less than," and it is understandable that Congress would endorse a result that gives a creditor more under Chapter 13 (which requires creditors to bear the risk that the debtor will default on adjusted debt after discharge) than under Chapter 7 (which gives creditors the greater speed and certainty of liquidation).[1]

\* \* \* \* \*

For these reasons, we affirm.

---

[1] Stephan also states in his brief that "[m]uch like the great works by Picasso we are left with a picture of legal conclusions from the Bankruptcy Court, which leaves us unable to discern a clear picture . . . . Undeterred, the District Court viewed our Bankruptcy Court's legal conclusions through Renoir lenses . . . ." App. Br. at 9. If we are to understand that Stephan believes the Bankruptcy and District Courts provided inadequate reasoning, he is mistaken. The record is clear, and the other judges to consider Stephan's arguments properly rejected them.