# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-2876

TRUSTEES OF THE SOUTHERN ILLINOIS
CARPENTERS WELFARE FUND,

*Plaintiffs-Appellants*,

v.

RFMS, INC., DUANE KREBS,
and LISA KREBS,

*Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 02-1067-WDS—**William D. Stiehl**, *Judge.*

_____

ARGUED DECEMBER 8, 2003—DECIDED MARCH 24, 2005

_____

Before WOOD, EVANS, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Lisa Krebs, a beneficiary of two separate ERISA-governed benefit plans, accrued approximately $160,000 worth of medical bills. Her employer, RFMS, Inc., under its plan's terms, paid $1,000, leaving the balance to be covered by the Southern Illinois Carpenters Welfare Fund, which was administered by Krebs's husband's employer. The Trustees of the Carpenters Fund

brought suit against RFMS and the Krebses, claiming that the RFMS plan's provisions which limited its duty to provide coverage were not applicable, and that RFMS ought to cover the entire amount. Both parties moved for judgment on the pleadings. We find that the terms of the RFMS's plan are unambiguous and explicitly limit payments to $1,000 for Lisa Krebs is covered by another employer-sponsored group health plan. We, therefore, affirm the district court's judgment in favor of RFMS.

## I. BACKGROUND

Lisa Krebs participates in two ERISA-governed health and welfare benefit plans. She is covered by the RFMS plan as an employee of RFMS and by the Carpenters plan as her husband Duane's spouse and dependent. When she incurred some $160,000 in medical expenses, Krebs submitted the medical bills to both plans. The Carpenters plan provides that "the plan covering the patient as a participant, active employee, member, or nondependent pays benefits before a plan covering the patient as a non-active employee or dependent." This provision is consistent with the terms of the RFMS plan and thus the parties concede that the RFMS plan, which covers Lisa as an active employee, was the primary payer required to adjudicate and pay benefits before the Carpenters plan.

The RFMS plan includes a sub-plan, the Wrap-around plan, which stipulates that "[e]mployees covered by another employer sponsored group health plan will automatically be covered under the Wrap-around Plan," and sets a "maximum benefit of $1,000 per person for expenses incurred in a calendar year." Further, the RFMS plan's No Loss Provision provides "that if an individual ever receives less contractual benefits, when combined with benefits covered under another private or public group health plan, that [sic] what would have been received were the individual covered

under Major Medical Benefits, then this Plan will pay the difference." Consistent with the Wrap-around sub-plan, RFMS paid Krebs $1,000, and Krebs then sought the reimbursement of the remaining $159,000 from the Carpenters plan. Rather than pay the outstanding sum, the Trustees of the Carpenters plan brought this action against RFMS and the Krebses, alleging that the Carpenters plan did not apply to Krebs's claim.

Both parties moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In their cross-motion, the Carpenters Trustees elaborated on the reason which, in their view, mandated that RFMS foot the bill: applying the RFMS Wrap-around sub-plan without also triggering the RFMS plan's No Loss Provision was inconsistent with the Trustees' interpretation of their own plan's coordination-of-benefits provision and, insofar as that interpretation was not arbitrary and capricious, it ought to compel RFMS to cover the balance of Krebs's expenses. The district court denied the plaintiffs' and granted the defendants' motion for judgment on the pleadings and also found that the Wrap-around sub-plan was applicable to Lisa's claim. The Trustees appeal.

## II. ANALYSIS

Appellants argue that the district court erred in granting RFMS's motion for judgment on the pleadings and denying their own motion. We review *de novo* the district court's order granting the motion for judgment on the pleadings. *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 719 (7th Cir. 2002).

As a preliminary matter, we address RFMS's contention, first set forth in the district court, that it is too late for the Trustees to argue that the Wrap-around sub-plan, as applied by RFMS, violates their interpretation of their own plan's coordination-of-benefits provision, because the argu-

ment was not originally alleged in the Trustees' complaint. The district court found that the complaint specifically referenced both plans' coordination-of-benefits provisions, thus allowing the court to consider the argument more fully developed in the plaintiffs' motion for judgment on the pleadings. We agree with the district court and decline RFMS's invitation to disregard the argument on appeal.

Both plans before us operate under the Employee Retirement Income Security Plan Act of 1974 ("ERISA"). 29 U.S.C. §§ 1001-1461. Although "ERISA provides comprehensive regulation of employee benefit plans," *McGurl v. Trucking Employees of New Jersey Welfare Fund*, 124 F.3d 471, 476 (3d Cir. 1997), it does not mandate the type or amount of benefit required to be provided by an employee welfare benefit plan. *See* 29 U.S.C. § 1102(b). Further, it "provides no guidance on coordination of benefits issues." *COB Clearinghouse Corp. v. Aetna U.S. Healthcare*, 362 F.3d 877, 879 (6th Cir. 2004). Instead, ERISA aims "to protect the financial integrity of pension and welfare plans by confining benefits to the terms of the plans as written . . . ." *Downs v. World Color Press*, 214 F.3d 802, 805 (7th Cir. 2000) (internal quotations omitted). We therefore interpret the plans' respective terms to determine which plan is responsible for paying Lisa Krebs's medical bills.

Where the terms of an ERISA-governed plan are unambiguous, we "will not look beyond its 'four corners' in interpreting its meaning." *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 873 (7th Cir. 2001). The terms of the RFMS plan are plain; the Wrap-around sub-plan explicitly limits payment to $1,000 for employees, such as Lisa Krebs, who are covered by another employer-sponsored group health plan. Nonetheless, the Carpenters Trustees contend that their interpretation of their own plan's coordination-of-benefits provision requires RFMS to pay $1,000 under the RFMS Wrap-around sub-plan first, and then the remaining $159,000 under the RFMS plan's No Loss Provision, before the Trustees are required to pay anything under their plan.

The Carpenters plan coordination-of-benefits provision states in relevant part that "[i]f the other plan has no guidelines for coordinating benefits, that plan will pay benefits before our medical plan" and "[i]f part of the other plan coordinates benefits and part does not, each part will be treated as a separate plan." The Trustees argue that the RFMS No Loss Provision is such a separate plan, as its language contains no reference to the coordination-of-benefits or order of payment, nor is the No Loss Provision specifically mentioned in RFMS's own coordination-of-benefits provision.[1] It therefore follows, the Trustees contend, that the No Loss Provision is "a separate plan" and, as such, it, rather than the Carpenters plan, should pay the remaining sum. In other words, the Trustees contend that RFMS ought to first pay Krebs $1,000 under the Wrap-around sub-plan, and then pay the remaining $159,000 under the RFMS plan's supposed separate plan, the No Loss Provision.

We find the Trustees' argument unpersuasive, as the plain language of the RFMS No Loss Provision is incapable of sustaining the Trustees' interpretation. As the district court noted, there is no support in the provision's language for the proposition that the No Loss Provision was intended to function as a separate plan subject to another plan's coordination-of-benefits analysis. The RFMS plan explicitly states that the "Wrap-around Plan has a No Loss Provision." Thus, the No Loss Provision is specifically incorporated into the Wrap-around Plan and cannot be said to constitute a separate plan for the purposes of determining the order of payment.

Notwithstanding the plain language of the RFMS plan, the Trustees contend that their interpretation of their own

---

[1] The RFMS coordination-of-benefits provision states in pertinent part: "If you or a dependent have any other health care plan coverage, benefits will be coordinated so that no more than 100% of covered charges are paid or reimbursed."

coordination-of-benefits provision is entitled to judicial deference, as it is neither arbitrary nor capricious. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (holding that deference is due when "the benefit plan gives the administrator or fiduciary discretionary authority" to "construe the terms of the plan"). While Trustees may interpret *their own* plan so long as that interpretation is neither arbitrary nor capricious, the Trustees' coordination-of-benefits argument requires, and directly relies on, the Trustees' interpretation of the RFMS plan. It is for us, and not the Trustees, to interpret that plan in relation to the Carpenters plan. *See Winstead v. J.C. Penney Co., Inc.*, 933 F.2d 576, 580 (7th Cir. 1991).

Moreover, the relevant provisions of these competing ERISA plans are compatible and, therefore, not mutually repugnant; accordingly, we will enforce the plans as written. *Cf. McGurl*, 124 F.3d at 480 (finding coordination-of-benefits provisions in two competing ERISA-governed plans mutually repugnant, requiring the court to fashion a remedy to resolve the conflict); *Winstead v. Indiana Ins. Co.*, 855 F.2d 430 (7th Cir. 1988) (affirming the district court's finding that an ERISA policy and a non-ERISA policy were mutually repugnant and apportioning liability between them on a pro rata basis as "eminently fair and equitable"). The RFMS Wrap-around sub-plan and the Trustees' coordination-of-benefits provision would be mutually repugnant if they were both "equally viable but conflicting." *Winstead*, 855 F.2d at 433. We agree with the district court that the provisions do not conflict. To the contrary, the RFMS plan is the primary payer required to pay Krebs first under its Wrap-around sub-plan. Thereafter, the burden shifts to the Carpenters plan to pay up to its policy limit. Only then does the RFMS plan's No Loss Provision require the payment of any residuary benefits by RFMS.

Although the outcome may perhaps seem somewhat inequitable, as RFMS, concededly the primary payer, will ulti-

mately pay substantially less than the Carpenters plan, at the end of the day, of the two competing plans in this suit, the RFMS plan turned out to be more efficaciously drafted than the Carpenters plan. As the two plans are not mutually repugnant, we enforce them as written.

Because the Trustees waived three claims of wrongdoing alleged in their original complaint by not arguing them on appeal, we do not consider these claims here.

## III. CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*