In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3286

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND, and
ARTHUR H. BUNTE, JR., as Trustee,

*Plaintiffs-Appellees*,

*v.*

WASTE MANAGEMENT OF MICHIGAN, INC.,
a Michigan corporation,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 5216—**William J. Hibbler**, *Judge.*

ARGUED NOVEMBER 29, 2011—DECIDED FEBRUARY 29, 2012

Before POSNER and KANNE, *Circuit Judges*, and
PRATT, *District Judge.*\*

KANNE, *Circuit Judge.* Waste Management of Michigan,
Inc., sought an early withdrawal from its obligation to

---

\* The Honorable Tanya W. Pratt, District Judge for the Southern
District of Indiana, sitting by designation.

make pension contributions to Central States, Southeast and Southwest Areas Pension Fund (the "Fund"), a multiemployer pension fund. But Waste Management's agreements with the Fund did not provide for an early withdrawal; in fact, clear language prevented it from taking such action. Waste Management was thus left in the unenviable position of arguing that the clear language in its agreements perhaps was not so clear. Undoubtedly, that is true in some cases. But this is not one of those cases.

Waste Management entered into a collective bargaining agreement ("CBA") with Teamsters Local Union No. 247, requiring Waste Management to make contributions on behalf of covered employees to the Fund. As part of its agreements with the Fund, Waste Management was obligated to make contributions through the stated term of the CBA. But as time went on and the stated term of the CBA neared its expiration, Waste Management decided it no longer wanted to participate in the Fund's plan and instead sought an alternate arrangement with Local 247. Waste Management also decided that financially, it would be more beneficial to withdraw from the Fund's plan immediately, rather than continue making contributions through the stated term of the CBA. Seizing upon any language in its agreements that might plausibly permit this course of action, Waste Management entered into a new CBA with Local 247 that immediately abrogated the obligation to make pension contributions to the Fund—six weeks prior to the expiration of the old CBA.

The Fund brought suit in district court, seeking damages for the unpaid pension contributions. The district court granted the Fund's motion for summary judgment, finding that the terms of the plan documents unambiguously prohibited Waste Management's actions. We affirm.

## I. BACKGROUND

In 2005, Waste Management entered into a CBA with Local 247 covering the period of February 1, 2005, through January 31, 2009. As part of this agreement, Waste Management agreed to make pension contributions to the Fund for the duration of the CBA. A number of other documents set forth the terms under which Waste Management participated in the pension fund, although not all of them are relevant for purposes of this appeal.

A Trust Agreement executed by the parties required Waste Management "to contribute to the Fund for the entire term of any [CBA] accepted by the Fund on the terms stated in that [CBA]." Moreover, the Trust Agreement created a Board of Trustees empowered to consider "[a]ll questions or controversies, of whatsoever character, arising in any manner between any parties or persons in connection with the Fund or the operation thereof." It also vested the Trustees with "discretionary and final authority in construing plan documents of the Pension Fund" and provided that "any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees and Employers."

The parties also entered into a Participation Agreement. This agreement required any change in the CBA agreed

to between Waste Management and Local 247 to be submitted to the Fund, and provided that any agreement "which affects [Waste Management's] contribution obligation which has not been submitted . . . shall not be binding on the Trustees." Importantly—and as we will discuss below in greater detail—the Participation Agreement expressly barred modifications to the CBA purporting to reduce or eliminate Waste Management's obligation to contribute to the Fund. The Participation Agreement also stated that the "Participation Agreement shall control" in the event of a conflict with any provisions contained in the CBA.

In 2008, Waste Management and Local 247 entered into early negotiations for a new CBA to replace the 2005 CBA, which was set to expire on January 31, 2009. On December 14, 2008, they agreed to a new CBA that no longer obligated Waste Management to make contributions to the Fund. Likely seeking to minimize its withdrawal liability from the pension fund, the new CBA purported to abrogate Waste Management's obligation to make contributions as of December 14, 2008—six weeks prior to the expiration of the 2005 CBA. The Fund, however, maintained that Waste Management was required to continue making pension contributions through January 31, 2009, and that any agreement purporting to eliminate this duty was invalid under the terms of the Participation and Trust Agreements.

The dispute was then brought to the Trustees, in accordance with the dispute resolution process contained in the Trust Agreement. Largely agreeing with the position

taken by the Fund, the Trustees found the terms of the Participation Agreement and the Trust Agreement expressly barred the actions taken by Waste Management, and that Waste Management was required to continue making pension contributions through the stated term of the 2005 CBA.

On August 25, 2009, the Fund filed suit in district court pursuant to section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145, claiming Waste Management breached its agreement to make pension contributions to the Fund. On January 14, 2010, the Fund filed a motion for summary judgment, contending there was no need for discovery because the case turned solely on the application of unambiguous contractual terms. The Fund also argued that the district court could only review the Trustees' decision for an abuse of discretion. Waste Management disagreed and filed a Rule 56(f)[1] motion for discovery, arguing that discovery was needed to ascertain possible conflicts of interest influencing the Trustees' decision, as well as the Fund's past practice in dealing with other contractually bound employers. Waste Management also contended that *de novo* review of the Trustees' decision was appropriate.

On May 19, 2010, the district court largely denied Waste Management's motion for discovery, permitting

---

[1] Rule 56 has since been amended, and Rule 56(f) now appears as Rule 56(d). *See* Fed. R. Civ. P. 56 advisory committee's note (2010 amends.) ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).").

only limited discovery into whether the Fund took steps to address any possible conflicts of interest by the Trustees. The district court also agreed with the Fund that the Trustees' decision could only be reviewed for an abuse of discretion. On September 2, 2010, the court granted the Fund's motion for summary judgment, finding that the terms of the plan documents unambiguously barred Waste Management from ceasing or reducing contributions to the Fund prior to January 31, 2009. Waste Management then filed this timely appeal, arguing that the district court erred in both denying its motion for discovery and granting summary judgment in favor of the Fund.

## II. ANALYSIS

In interpreting the language of an ERISA-governed plan, we apply the federal common law rules of contract interpretation. *Kamler v. H/N Telecomm. Servs., Inc.*, 305 F.3d 672, 680 (7th Cir. 2002). Our first task is to determine whether the contract at issue is ambiguous or unambiguous. *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 873 (7th Cir. 2001). "Contract language is ambiguous if it is susceptible to more than one reasonable interpretation." *Id.* Where the terms of a plan document are unambiguous, we "will not look beyond its 'four corners' in interpreting its meaning." *Trs. of S. Ill. Carpenters Welfare Fund v. RFMS, Inc.*, 401 F.3d 847, 849 (7th Cir. 2005). Contract interpretation lends itself to resolution by summary judgment because "the determination of whether a contract is ambiguous is a matter of law." *Barnett v.*

*Ameren Corp.*, 436 F.3d 830, 833 (7th Cir. 2006). We review the district court's grant of summary judgment *de novo*, construing all facts and drawing all reasonable inferences in favor of the nonmoving party. *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011).

Waste Management argues that the plan documents are ambiguous because they are subject to more than one reasonable interpretation. The crux of its argument lies in the purported ambiguity of the term "prospectively," contained in the Participation Agreement. In relevant part, the Participation Agreement states:

> The following agreements shall not be valid: a) an agreement that purports to retroactively eliminate or reduce the Employer's contracted or statutory duty to contribute to the Fund(s); b) an agreement that purports to prospectively reduce the contribution rate payable to the Pension Fund[;] or c) an agreement that purports to prospectively eliminate the duty to contribute to the Pension Fund during the stated term of a collective bargaining agreement that has been accepted by the Pension Fund.

Although Waste Management concedes that it could not "prospectively" (or retroactively) eliminate the duty to contribute to the Fund under the terms of the Participation Agreement, it contends that the new CBA signed in 2008 did not eliminate this duty prospectively—it did so immediately. Thus, Waste Management asserts that the term "prospectively" is ambiguous because it could reasonably be interpreted to allow for immediate action.

Defying common sense and logic, Waste Management posits that an agreement to stop paying contributions tomorrow or even one hour in the future would be barred by the Participation Agreement, but an agreement to do so immediately would be perfectly fine. We disagree—this is not a reasonable interpretation of the Participation Agreement.

Waste Management makes an equally unconvincing argument regarding "ambiguities" in the 2005 CBA. The CBA states:

> This Agreement shall be in full force and effective from February 1, 2005 to and including January 31, 2009, and shall continue in full force and effect from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other by Certified Mail at least sixty (60) days prior to the date of expiration.

Waste Management asserts that the opt-out provision in the last clause could be interpreted to allow either party to the CBA to unilaterally cancel the agreement at any time during the four-year period of the CBA, so long as sixty days' notice was provided. If the 2005 CBA allowed either party to cancel the CBA at any time, then the plan documents—which only require Waste Management to make contributions for the stated term of the CBA—necessarily also contemplate a party opting out. Therefore, Waste Management concludes, the 2005 CBA could be read to allow for the unilateral cancellation of the CBA and the cessation of contribution payments prior to January 31, 2009.

Waste Management's reading of the 2005 CBA is grammatically inaccurate and unreasonable. The first clause, stating the duration of the CBA, is separated from the remainder of the language by a comma, and is then followed by an automatic renewal provision. The opt-out provision follows, modifying only the automatic renewal provision; the opt-out provision does not modify the first clause. Thus, the CBA unambiguously allows either party to unilaterally cancel the automatic renewal of the 2005 CBA, so long as sixty days' notice is provided prior to the expiration of the CBA. It does not, as Waste Management asserts, allow for the unilateral cancellation of the CBA during the stated term of the CBA. As the district court aptly noted, Waste Management's reading of the CBA "would be absurd if for no other reason than that it would allow either party to opt out of the contract at any time during the four-year term of the agreement except for the last sixty days." *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich., Inc.*, 737 F. Supp. 2d 952, 957 (N.D. Ill. 2010). Plainly, the terms of the relevant documents are unambiguous.[2]

---

[2] Waste Management also identifies an additional ambiguity concerning the Fund's Rehabilitation Plan, which relates to an employer withdrawing from the pension fund while the Fund is in critical status. But Waste Management did not preserve this argument for appeal, relegating it to only a footnote in its briefing to the district court. *See Moriarty ex rel. Local Union No. 727 v. Svec*, 429 F.3d 710, 722 (7th Cir. 2005) ("A footnote

(continued...)

Waste Management also contends that there were latent ambiguities in the agreements that create an issue of material fact. A latent ambiguity is present when a contract appears unambiguous, but a disputed term "actually means something different from what it appears to mean on its face." *Neuma*, 259 F.3d at 876. In limited circumstances, parties may present extrinsic evidence to demonstrate a latent ambiguity despite the fact that a contract appears clear on its face, *id.* at 875-76, because the ambiguity "becomes apparent only in consideration of the surrounding circumstances," *Int'l Union v. ZF Boge Elastmetall LLC*, 649 F.3d 641, 649 (7th Cir. 2011).

But Waste Management does not identify any specific latent ambiguities in the language of the plan documents—ostensibly because the district court allowed for only limited discovery, and not because there are none. Accordingly, Waste Management argues that broader discovery was necessary to allow it to identify evidence of a latent ambiguity, notwithstanding the unambiguous terms of the documents. This brings us to a related point and the second issue on appeal: Waste Management's claim that the district court abused its discretion in denying broader discovery.

---

[2] (...continued)
does not preserve an issue for review."); *To-Am Equip. Co. v. Mitsubishi Caterpillar Forklift Am., Inc.*, 152 F.3d 658, 663 (7th Cir. 1998) (finding that argument "buried" in a footnote in a brief to the district court did not preserve the issue for review). Thus, we will not consider it.

"It is well-settled that district courts enjoy broad discretion in controlling discovery." *McCarthy v. Option One Mortg. Corp.*, 362 F.3d 1008, 1012 (7th Cir. 2004). We review the district court's decision to deny Waste Management's Rule 56(f) motion for an abuse of discretion. *King v. Burlington N. & Santa Fe Ry. Co.*, 538 F.3d 814, 817 (7th Cir. 2008). We have previously noted a general reluctance to grant extensive discovery in ERISA cases, *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 813 (7th Cir. 2006) *(citing Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 982 (7th Cir. 1999)), and the present case allows us to echo this sentiment. Here, discovery would be costly and produce very little relevant information when the terms of the plan documents are unambiguous.

Waste Management has not offered any other reasonable interpretation of the unambiguous language in the plan documents, even assuming there was extrinsic evidence to support such a hypothetical alternative interpretation. "Although extrinsic evidence is admissible to show that a written contract which looks clear is actually ambiguous . . . there must be either contractual language on which to hang the label of ambiguous or some yawning void that cries out for an implied term." *ZF Boge Elastmetall*, 649 F.3d at 649 (internal punctuation omitted). Such contractual language or the presence of a void is notably absent in the various documents, and Waste Management should not be entitled to expansive discovery when it has only the mere speculative allegation of a latent ambiguity. "[D]iscovery is not to be used as a fishing expedition."

*EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 971
(7th Cir. 1996).

Moreover, it is unclear how the issues Waste Manage-
ment identified for discovery—conflicts of interest by
the Trustees rendering the initial decision and the
Fund's "pattern of practice" in dealing with other em-
ployers—would help ascertain any latent ambiguity.
Waste Management spent much time and effort arguing
that the district court erred in holding that the Trustees'
interpretation should be reviewed under a deferential
abuse of discretion standard, rather than *de novo*.
But such an argument was largely wasted because, as
previously stated, the terms of the documents are unam-
biguous. Thus, the standard of review is of no conse-
quence. And as a result, any potential conflict of inter-
est—which would be relevant to determine if there was
an abuse of discretion—was largely irrelevant because
the Trustee's decision would be upheld even under a
*de novo* standard.

It is also unclear how the Fund's "pattern of practice"
in dealing with other employers—Waste Management
asserts that the Fund did not enforce similar con-
tractual rights with respect to other employers—would
reveal latent ambiguities. Such business practice can
hardly be considered novel; for a number of reasons,
large companies commonly might choose to waive
their contractual rights when dealing with some cus-
tomers. Even if the Fund waived its contractual rights
arising out of separate agreements with different em-
ployers, the Fund is still entitled to enforce its contrac-

tual rights according to the terms of its agreements with Waste Management. Extrinsic evidence of the Fund's practice with other employers would hardly demonstrate a latent ambiguity. Thus, the district court did not abuse its discretion in denying Waste Management's motion for broader discovery.

Perhaps sensing the overall weakness of its argument, Waste Management concludes by boldly asserting that, as construed by the district court, the Participation Agreement and the other documents do not allow an employer to *ever* withdraw from the pension fund. But this assertion is preposterous; Waste Management was only obligated to make contributions to the Fund through January 30, 2009. The parties, each sophisticated entities represented by competent legal counsel, bargained for this end date. Waste Management was free to bargain for an earlier end date or the option to withdraw earlier. But it chose not to, and instead agreed to make contributions through the stated term of the 2005 CBA. Although it scoured the plan documents looking for some plausible loophole allowing for an early withdrawal, Waste Management did so in vain.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.