In the MATTER OF the Complaint of INGRAM BARGE COMPANY as Owner of the M/V Dale A. Heller and the IB9525, IN025300, IN085089, IN095041 IN096081, IN107057, and IN117513, Petitioning for Exoneration from or Limitation of Liability,

Consolidated with,

In the Matter of American Commercial Lines, LLC, as Owner and Inland Marine Service, Inc. as Owner Pro Hac Vice of the Loyd Murphy for Exoneration from or Limitation of Liability.

Civil Action No.: 13 C 3453, Civil Action No.: 13 C 4292 (Consolidated)

United States District Court,
N.D. Illinois,
Eastern Division.

Signed August 22, 2014

### ORDER

AMY J. ST. EVE, United States District Court Judge

The Court denies Ingram Barge Co.'s Motion to Compel Production by the United States of Larry Rodriguez's Personnel File [430] and grants the United States' Motion for Protective Order [432].

### STATEMENT

Before the Court are Ingram Barge Co.'s ("Ingram") Motion to Compel Production by the United States of Larry Rodriguez's Personnel File (R. 430) and the United States' Motion for Protective Order (R. 432.) For the following reasons, the Court denies Ingram's motion and grants the United States' motion.

### BACKGROUND

On May 8, 2013, Ingram, as owner of the M/V Dale A. Heller ("Dale Heller") and seven barges, filed a complaint for exoneration from or limitation of liability. The complaint anticipates that claimants will bring various

claims against Ingram, the Dale Heller, and the seven barges as a result of an April 18, 2013 incident. (Case No. 13–cv–3453, R. 1, Compl. at 3). Ingram's Complaint alleges that due to severe weather conditions on April 17, 2013, the Dale Heller temporarily moored at Mile 248.0 in the Illinois River to plan for its traversal past the Marseilles, Illinois Dam and into the Marseilles Canal. (*Id.*) On April 18, 2013, the M/V Loyd Murphy, owned by American Commercial Lines, LLC ("ACL") and operated by Inland Marine, and two United States Army Corps of Engineers vessels agreed to assist the Dale Heller and its tow navigate past the Marseilles Dam. (*Id.*) Ingram's complaint alleges that "while traversing Mile 247.0 near the Marseilles Dam, due to unanticipated outdrafts from open gates of the dam, the tow broke up, and [Ingram's] seven [ ] barges were swept into the Marseilles Dam" and "may have allided" with the dam. (*Id.*) The Complaint also asserts that "[t]he event was caused by an Act of God, and/or the acts or omissions of others for whom Ingram is not responsible." (*Id.* at 4.)

On November 26, 2013, Ingram filed an Amended Counterclaim against the United States. (R. 373.) In that Amended Counterclaim, Ingram alleges that Mr. Rodriguez was aware of the risk that the flotilla of barges might break loose and damage the Dam. Specifically, Ingram alleges that Mr. Rodriguez "offered to lower the gates of the Marseilles Dam to a total opening of or about 16 feet to allow the flotilla to safely navigate into the Marseilles Canal, in exchange for Ingram's agreement to navigate the flotilla into the Marseilles Canal, where the flotilla would not pose a threat to the Marseilles Dam." (*Id.* ¶ 32.) Ingram further alleges that Mr. Rodriguez breached the agreement with Ingram in a number of ways, but primarily by failing to lower the Marseilles Dam gates to approximately 16 feet. (*Id.* ¶ 35.)

On January 21, 2014, Ingram served on the United States its Rule 34 Requests for Production of Documents. Request Number 6 sought the "Personnel and payroll files for all Marseilles Lock and Dam personnel present on April 18, 2013 ..." The United States objected to this request on the basis of relevance and privilege pursuant to the Privacy Act, 5 U.S.C. § 522(a). The United States listed Mr. Rodriguez's Official Personnel Folder ("OPF") on its privilege log as a document subject to the Privacy Act. Ingram deposed Mr. Rodriguez on July 30, 2014. At his deposition, Mr. Rodriguez testified that in August 2013, the U.S. Army Corps interviewed him as part of the "Commander's Inquiry" into the April 18, 2013 allision. He also testified that at approximately the same time, the Army Corps initiated an investigation ("Investigation") due to issues between him and other lockmen who worked at the lockhouse at the Marseilles Dam. In September 2013, the U.S. Army Corps reassigned Mr. Rodriguez to the Starved Rock Lock & Dam, and he resigned from the U.S. Army Corps in January 2014. Both parties agree that Mr. Rodriguez was reluctant to discuss the Investigation at his deposition, but that he did testify that it had nothing to do with the April 18, 2013 allision. The United States has acknowledged that the U.S. Army Corps created a draft workplace investigation report related to the Investigation.

On August 1, 2014, Ingram moved to compel Mr. Rodriguez's personnel file "to see documents that reveal reasons for [Mr. Rodriguez's] reassignment to Starved Rock and why he was demoted from the Lockmaster job position. We need to learn whether his resignation in January 2014 from the Army Corps was voluntary or forced." (R. 430–1, Ingram Mem. at 2.) Also on August 1, the United States filed a motion for a protective order precluding the disclosure of Mr. Rodriguez's personnel file and the draft workplace investigation report as not relevant and privileged under the Privacy Act, 5 U.S.C. § 522a. The United States produced Mr. Rodriguez's personnel file and the draft workplace investigation report to the Court for an *in camera* and *ex parte* review.

## LEGAL STANDARD

The Court has broad discretion when resolving discovery disputes. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir.2013); *Central States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of*

*Mich. Inc.,* 674 F.3d 630, 636 (7th Cir.2012). Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). "The burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.,* 235 F.R.D. 447, 450 (N.D.Ill. 2006). In the context of motions to compel, the Seventh Circuit instructs that a "district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Airlines, Inc.,* 95 F.3d 492, 496 (7th Cir.1996).

## ANALYSIS

█ After reviewing Mr. Rodriguez's personnel file and the draft workplace investigation report, the Court finds that these documents are not relevant to this litigation or Mr. Rodriguez's role in the April 18, 2013 allision. Rather, as the United States previously informed Ingram, they are confidential documents protected by the Privacy Act of 1974, 5 U.S.C. § 552a.

"The Privacy Act directs agencies to establish safeguards to protect individuals against the disclosure of confidential records 'which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained.'" *F.A.A. v. Cooper,* —— U.S. ——, 132 S.Ct. 1441, 182 L.Ed.2d 497 (2012) (quoting 5. U.S.C. § 552a(e)(10)). The Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains ..." 5 U.S.C. § 552a(b).

The Privacy Act defines "record" as "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history ..." 5 U.S.C. § 552a(a)(4). While the statute requires the consent of the relevant individual before disclosure, one of the exceptions is when the disclosure is pursuant to a court order. 5 U.S.C. § 552a(b)(11). The documents at issue—Mr. Rodriguez's personnel file and the draft workplace investigation report that led to his reassignment—clearly fall within the scope of the Privacy Act. The United States, therefore, may not produce those documents in this litigation without Mr. Rodriguez's consent or a court order.

In its Motion to Compel, Ingram asserted:

> The parties need Rodriguez's personnel file to evaluate any documents involved in the Corps' investigation of Rodriguez's job performance. His performance evaluations may shed light on any communications issues he has evinced over his 28 years at Marseilles Lock & Dam. In particular, we need to see documents that reveal reasons for his reassignment to Starved Rock and why he was demoted from the Lockmaster job position. We need to learn whether his resignation in January 2014 from the Army Corps was voluntary or forced.

(Ingram Mem. at 2.) While Ingram made a passing reference to Mr. Rodriguez's "communications issues" over his 28 year career at Marseilles Lock & Dam, Ingram's motion clearly focuses on the workplace investigation report and the reason for Mr. Rodriguez's demotion and eventual resignation. Further, Ingram's motion indicates that its primary concern is whether the Investigation and Rodriguez's demotion and resignation were related to the April 18, 2013 allision.

In its response to the United States' motion for a protective order, Ingram identified additional concerns bearing on Mr. Rodriguez's credibility that it felt might "aid the Court as it reviews the file." (R. 434, Ingram Resp. to U.S. Mot. at 2.) While some of these questions might trigger the often baseless objections of "vague" and "overly

broad,"[1] the Court kept Ingram's concerns in mind as it reviewed the documents. Nevertheless, the Court finds that Mr. Rodriguez's personnel file and the draft workplace investigation report are not relevant to this litigation. The personnel file contains administrative documents that do not address the April 18, 2013 allision and do not touch on the concerns that Ingram identified in its motion and response. Further, the draft workplace investigation report is unrelated to the April 18, 2013 allision that is at issue in this case. "Discovery of matter not 'reasonably calculated to lead to the discovery of admissible evidence' is not within the scope of Rule 26(b)(1)." *Miller UK Ltd. v. Caterpillar, Inc.,* 17 F.Supp.3d 711, 721 (N.D.Ill. 2014) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 352, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Thus the United States does not need to produce Mr. Rodriguez's personnel file or the draft workplace investigation report.

## CONCLUSION

For these reasons, the Court denies Ingram's Motion to Compel Production by the United States of Larry Rodriguez's Personnel File and grants the United States' Motion for Protective Order.

[1]. For example, Ingram asks, "[t]hroughout his 28–year career at Marseilles Lock & Dam have there been any issues with Rodriguez and the clarity of communications with colleagues and vessels? Have there been any instances of miscommunication?" (Ingram Resp. to U.S. Mot. at 2.)