**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 12, 2015[*]
Decided March 18, 2015

**Before**

RICHARD A. POSNER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

Nos. 14-2238, 14-2468, 14-2855, 14-2976

| | |
|---|---|
| MICHELLE Y. BROWN, | Appeals from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 11 C 5963 |
| HEALTH CARE SERVICE CORPORATION and RAYMOND E. BISANZ, | Milton I. Shadur, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Michelle Brown, an African-American employee of Health Care Service Corporation, appeals the grant of summary judgment for the defendants in this

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

employment-discrimination suit asserting failure-to-promote and retaliation claims under 42 U.S.C. § 1981. We affirm.[1]

Brown's suit is based on two failure-to-promote claims, the first involving events from June 2006. Brown's supervisor, Raymond Bisanz, passed her over in favor of a white applicant for a new position—the Director of Financial Initiatives—to assist with mergers and acquisitions projects. Though Bisanz had promoted Brown four times during her thirty-year career in the finance division, he dissuaded her from pursuing this new position because he did not perceive it to be a promotion from her current director-level position. Brown eventually withdrew her application.

The following year Denise Bujak, then the Senior Vice President and Chief Financial Officer, created a new vice president position to head Brown's division. She hired James Walsh, a white candidate who was an equity partner at a major public accounting firm. As vice president, Walsh was responsible for acquiring subsidiary companies through mergers and acquisitions and giving presentations to senior management.

In 2009 Brown filed a charge of discrimination with the Equal Employment Opportunity Commission alleging race, sex, and age discrimination. Five months later, Bujak implemented a change she had been contemplating: reassigning to a white employee Brown's supervision of remitting money from abandoned accounts to the customers' state.

In 2011 Brown sued HCSC and Bisanz under 42 U.S.C. § 1981, alleging race discrimination and retaliation. She asserted that she was not promoted to the new directorship or vice president positions because of her race. She also claimed that the company had retaliated for her EEOC filing by removing one of her job responsibilities.

---

[1]Brown filed four notices of appeal, which we docketed and have consolidated. Brown's second appeal (appealing the denial of her postjudgment motion) conferred appellate jurisdiction over the first (appealing the grant of summary judgment in the defendants' favor), so we dismiss the first appeal (no. 14-2238) as duplicative. *See Borrero v. City of Chicago*, 456 F.3d 698, 700 (7th Cir. 2006). We dismiss the third appeal (no. 14-2855), too, for lack of jurisdiction because Brown appealed from the August 18, 2014, order imposing sanctions, but that order was nonfinal because the district court reserved the total calculation of fees. *See Feldman v. Olin Corp.*, 692 F.3d 748, 758 (7th Cir. 2012).

Discovery ensued and Brown, proceeding pro se, was sanctioned. She moved to compel the deposition of an HCSC representative on overly broad and burdensome topics three times, even after the court instructed her to narrow the scope. Brown also sought to compel the deposition of one of her subordinates who did not have any personal knowledge of the events in Brown's suit. As a sanction, the district court ordered Brown to pay the attorneys' fees and costs incurred by the defendants in responding to her repeated attempts to compel irrelevant and burdensome depositions. Two weeks later Brown moved the court to reconsider the sanctions, and the court ordered her to pay the fees and costs associated with responding to this latest motion, because despite the "repeated efforts to be politely instructive," Brown continued to abuse the judicial process.

The court eventually granted the defendants' motion for summary judgment, adopting it "lock, stock and barrel." The court concluded that Brown's first failure-to-promote claim—that she was not hired for the directorship position in 2006 because of her race—was barred by the four-year statute of limitations. Her second failure-to-promote claim, the court continued, also failed because Brown produced insufficient evidence that the company's legitimate, nondiscriminatory reason for hiring Walsh—that he was more qualified—was pretextual. As for her retaliation claim, the court relied on the defendants' reasons in concluding that Brown failed to establish a prima facie case under both the direct and indirect methods, including that she presented no evidence of a causal connection between her protected activity—her filing of an EEOC charge—and the reassignment of her job duties.

Brown then filed a postjudgment motion, asserting (without any factual support) that the defendants should be estopped from raising the statute of limitations as a defense to her first failure-to-promote claim because their fraud prevented her from discovering the discrimination. She generally challenged the rest of the district court's order granting summary judgment to the defendants. The court characterized the motion as a "turgid rehash" of her previous arguments and sanctioned her a final time, again ordering her to pay the defendants' fees and costs of responding to the motion.

On appeal Brown maintains that the defendants should have been equitably estopped from raising the statute of limitations as a defense to her first failure-to-promote claim because of their fraud. But Brown waived this argument by raising it for the first time in her postjudgment motion. *See United States v. Rueth Dev. Co.*, 335 F.3d 598, 606 (7th Cir. 2003); *Sipp v. Astrue*, 641 F.3d 975, 980 (8th Cir. 2011).

Brown next challenges the court's determination that she failed to present sufficient evidence of pretext regarding her second failure-to-promote claim. Brown maintains that the company fabricated its reason for hiring Walsh—that he was more qualified—to justify deviating from its pattern of promoting a director to become the division's vice president at a time when she, an African-American, was a director. But Brown's theory is not supported by sufficient evidence. Bujak explained that she hired Walsh because he had experience in public accounting, mergers and acquisitions, annual financial audits, and presenting to senior management. Brown does not dispute these qualifications and responds that she had some experience in those areas, but this is insufficient to create a fact issue over whether the disparity in qualifications between Brown and Walsh was so great that no reasonable person could disagree that Brown was better qualified. *See Cichon v. Exelon Generation Co., LLC,* 401 F.3d 803, 813 (7th Cir. 2005); *Milbrook v. IBP, Inc.,* 280 F.3d 1169, 1180 (7th Cir. 2002).

Regarding retaliation, Brown asserts that the district court misapprehended the nature of her protected activity: she identifies the protected activity as her meeting with Bujak in the fall of 2008 rather than her EEOC filing. But that meeting does not constitute protected activity because merely complaining in general terms about a supervisor's unprofessionalism without indicating a connection to a protected class, as Brown did at the meeting, is insufficient. *See Tomanovich v. City of Indianapolis,* 457 F.3d 656, 663 (7th Cir. 2006).

Brown also suggests that the court disregarded her attempt to establish a prima facie case of retaliation under the indirect method, and she identifies two white employees—Bruce Lane and Michael Cervenka—who, she says, reported to the same supervisors but did not complain about race discrimination and were promoted to vice president positions. The proposed comparator need not be identical to the plaintiff in every conceivable way, *see Coleman v. Donahue,* 667 F.3d 835, 846 (7th Cir. 2012), but Brown has provided no evidence of either employee's performance history to allow a useful comparison between Brown (who was operating over budget) and the proposed comparators. *See Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 403–04 (7th Cir. 2007); *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir. 2002).

Brown next contests the district court's discovery rulings.[2] She argues for example that the district court erred by refusing to compel the deposition of an HCSC

---

[2] The appellees assert that we do not have jurisdiction to review the district court's discovery orders because Brown did not identify those orders in any notice of appeal, as

representative because she proposed sufficiently narrow and specific topics. But the district court did not abuse its discretion in denying her request because Brown sought to depose HCSC about its compliance with other federal statutes, topics well beyond Brown's race-discrimination and retaliation claims. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013); *Cent. States, Se. and Sw. Areas Pension Fund v. Waste Mgmt. of Michigan, Inc.*, 674 F.3d 630, 636–37 (7th Cir. 2012). Brown points also to the court's refusal to compel the deposition of Yvonne Broomfield, an African-American employee with no personal knowledge of pertinent events, but a court has the discretion to deny a motion to compel where, as here, a deposition would not "aid in the exploration of a material issue." *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002) (citation and quotation marks omitted).

Brown next contends that the district court violated due process by imposing each sanction without explaining its reasons or authority for doing so. But Brown overlooks the court's extensive and repeated warnings that her abuse of the judicial process may result in monetary sanctions. In light of these warnings and opportunities to respond, the court did not abuse its discretion by sanctioning her. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008).

Finally, regarding the calculation of the defendants' costs and attorneys' fees, Brown argues that the district court erred by failing to inquire whether the hourly rates were reasonable. But the defendants' attorneys billed at their regular hourly rate, and an attorney's "actual billing rate for comparable work is presumptively appropriate." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999) (citations and quotation marks omitted).

We have considered Brown's remaining arguments; none is developed or substantial enough to warrant further comment.

Accordingly, we DISMISS appeal no. 14-2238 as duplicative and appeal no. 14-2855 for lack of jurisdiction. We AFFIRM appeal nos. 14-2468 and 14-2976. Finally, consistent with the parties' stipulation on appeal, the costs due to the defendants are

---

required by Federal Rule of Appellate Procedure 3(c)(1)(B). But we liberally construe that rule's notice requirements, *see JP Morgan Chase Bank, N.A. v. Asia Pulp & Paper Co., Ltd.*, 707 F.3d 853, 861–62 (7th Cir. 2013), and we may consider a discovery ruling as part of an appeal of a final judgment, *see United States ex rel. Chandler v. Cook County*, 277 F.3d 969, 981 (7th Cir. 2002).

reduced by $787.51. We ORDER Brown to pay the defendants $20,250.60 in attorneys' fees and costs.