**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 18, 2015[*]
Decided June 18, 2015

**Before**

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 14-1621

| | |
|---|---|
| CALVIN MERRITTE, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 12-cv-00738-MJR-DGW |
| BROCK BRINKMAN, et al., *Defendants-Appellees.* | Michael J. Reagan, *Chief Judge.* |

**O R D E R**

Calvin Merritte, an Illinois inmate, appeals the grant of summary judgment against him in this suit under 42 U.S.C. § 1983 asserting that a correctional officer and prison nurse acted with deliberate indifference when they confiscated his crutches four days after he sprained his ankle. Because Merritte furnished no evidence suggesting

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

that the nurse provided constitutionally inadequate treatment or that the correctional officer interfered with a medical judgment, we affirm.

Merritte injured his ankle while playing basketball at Robinson Correctional Center. A prison nurse examined him and gave him crutches as well as a cold pack, Tylenol, and an Ace bandage. Four days later, correctional officer Brock Brinkman reported to the healthcare unit that Merritte was using his crutches only part of the time—to walk to and from the cafeteria—and that his need for the crutches should be re-evaluated because the unused crutches posed a security risk. Brinkman did more than report him, Merritte says—Brinkman ordered him to return the crutches. Merritte was called that same day to the healthcare unit, where he saw Linda Schneider, a prison nurse, who confiscated his crutches. Schneider did not remember examining Merritte, but says she would have evaluated his need for the crutches based on all of the available information. Merritte, however, says that Schneider did not perform an examination before taking his crutches and maintains that his ankle was so swollen that he could not wear his normal shoes. He returned three more times that month to the healthcare unit, continuing to complain of ankle pain and seeking return of his crutches. He was prescribed low-bunk and slow-walking passes, but not crutches. Two X-rays over the next couple months showed no fracture or significant soft tissue swelling.

Merritte sued Schneider and Brinkman, alleging that they were deliberately indifferent in confiscating his crutches. He claimed that Brinkman, the correctional officer, substituted his judgment for that of a medical professional, and that Schneider relied on Brinkman's assessment rather than exercising her own medical judgment to determine whether Merritte's ankle sprain still required the use of crutches. Four times Merritte sought recruitment of counsel—twice before the defendants answered the complaint and twice during discovery. He needed a lawyer, he argued, to help him find witnesses, obtain a medical expert, and respond to the defendants' discovery objections. The district court denied each request explaining that Merritte's claim did not involve a complex issue and that his filings showed he was competent to represent himself.

After Brock and Schneider moved for summary judgment, Merritte opposed the motion and sought a continuance to conduct additional discovery. *See* FED. R. CIV. P. 56(d). He said that his discovery had been hindered by certain protective orders, for example the orders had restricted him from copying the prison policies and procedures for medical services, and had relieved the defendants from responding to his discovery requests that the court had deemed burdensome. These orders, Merritte asserted, prevented him from obtaining information about the prison procedures for treating an

ankle sprain, the actual start and stop dates for his use of crutches, the identity of witnesses who may have been in the yard on the day in question and could confirm that he was using crutches, and data from the Offender Tracking System clarifying whether he was even in the yard on the day Brinkman claimed to see him walking without crutches. He also renewed his request for a physical examination and medical expert.

The district court granted summary judgment for Schneider and Brinkman. At the outset the court denied Merritte's request under Rule 56(d) for more time to conduct discovery. The court explained that a number of discovery requests had already been denied as burdensome and others were not relevant to the question of deliberate indifference (i.e., "start and stop dates" for his crutches), and in any event Merritte's opportunity to conduct discovery had been "ample" and his response to the summary judgment motion had been "thoughtful" and supported by relevant case authority. As for the merits, the court credited Merritte's version of events, and acknowledged that Schneider's confiscation of the crutches "may be an indication of negligence" but concluded that her actions fell "far short of" deliberate indifference. Not only did she continue treating his ankle sprain with other treatments—pain medication, an ankle wrap, and slow-walking and low-bunk permits—but also no other medical professional who subsequently evaluated Merritte found a need to prescribe crutches. As for Brinkman, the court concluded that the record revealed no evidence that he took any action that interfered with a prescribed medical treatment.

On appeal Merritte argues that the district court erred in granting summary judgment because the facts show, not that he disagreed with Schneider's course of treatment, but rather that she failed to exercise her medical judgment when she confiscated his crutches without performing an examination. His ankle was so swollen that he obviously needed crutches and her decision to confiscate them contravened a determination from another medical professional's order that they were necessary.

But the district court correctly concluded that there was no evidence of deliberate misconduct on Schneider's part. She may have confiscated his crutches after hearing that Merritte was no longer using them, but his other prescribed treatments—pain medication, an ankle wrap, and accommodations (low-bunk and slow-walking passes)—were not taken away. "There is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697–98 (7th Cir. 2008) (no deliberate indifference when physician's assistant gave prisoner with back injury some of his requested treatment—pain medication and X-ray—but not an MRI or referral to an orthopedic

surgeon). Further, the fact that other medical professionals who subsequently examined Merritte also did not believe that he needed crutches indicates that her judgment did not depart significantly from accepted professional norms. *See Pyles v. Fahim*, 771 F.3d 403, 411(7th Cir. 2014); *Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1073–74 (7th Cir. 2012).

Merritte also challenges the grant of summary judgment for Brinkman because a disputed fact exists over whether he was using his crutches when Brinkman reported him to the healthcare unit. But as the district court properly observed, Brinkman's report may have been the catalyst to his crutches being confiscated, but it was Schneider's decision to take away the crutches. There is no evidence that Brinkman intentionally interfered with the prescribed medical treatment or that he acted with knowledge of a serious risk of harm to Merritte. *See Chapman v. Keltner*, 241 F.3d 842, 846 (7th Cir. 2001).

Merritte also maintains that the district court abused its discretion in denying his request for additional discovery without which, he says, he could not oppose the defendants' summary judgment motion. But as the district court determined, Merritte already had all the relevant discovery he needed. The discovery he sought would not have helped Merritte show that, in response to his ankle sprain, no minimally competent professional would have confiscated his crutches. *See Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Michigan, Inc.*, 674 F.3d 630, 636 (7th Cir. 2012) (additional discovery would not have provided relevant information); *Grayson v. O'Neill*, 308 F.3d 808, 816 (7th Cir. 2002) (same).

Finally, Merritte argues that the district court abused its discretion by denying his requests for recruitment of counsel to help him conduct discovery—a need borne out, he says, by court rulings that struck many of his discovery requests as burdensome and frivolous. But the district court correctly determined that Merritte's claim was not complex and that he was able to represent himself, *see Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014); *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (en banc), and the record shows that Merritte on his own was able to successfully obtain his medical records and prison policies for treating joint sprains.

AFFIRMED.